100 N.J. Super. 154 (1967)
241 A.2d 455
ANNA A. BRUNI, PLAINTIFF-APPELLANT,
v.
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1967.
Decided July 14, 1967.
*155 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Frank W. Thatcher argued the cause for plaintiff-appellant (Mr. Joseph R. Moss, attorney).
Mr. George D. Rothermel argued the cause for defendant-respondent (Mr. Samuel Kalikman, of counsel and on the brief).
PER CURIAM.
Plaintiff appeals from the dismissal of her suit for the proceeds of a life insurance policy of which she was the named beneficiary.
On October 19, 1962, defendant, The Prudential Insurance Company of America (Prudential), issued a $16,000 policy insuring the life of Frank L. Bruni. The policy names Anna A. Bruni his wife, plaintiff herein, as beneficiary. Premiums on the policy were payable on a monthly basis at the rate of $16.15 per month payable on the 19th of each month. Under the policy a grace period of 31 days was allowed to make payment of a premium in default. If a premium remained unpaid at the end of the grace period, the policy thereupon terminated. The policy specified that *156 no agent of the company had the authority to extend the time for payment of a premium or to waive a forfeiture of the policy. It also provided a method of obtaining reinstatement of a lapsed policy upon certain conditions.
Monthly premium payments were duly made on the policy for October, November and December of 1962 and January of 1963. The premium payment due February 19, 1963 was not paid on time nor within the 31 day grace period thereafter. On March 31, 1963 the insured signed an application for reinstatement of the policy which was approved on April 11, 1963. The application shows that premiums for the months of February and March were paid under the application.
The April premium was not paid when due nor within the 31 day grace period thereafter. On June 3, 1963 both plaintiff and her husband signed an application for reinstatement of the policy which was approved on June 11. The application shows that premiums for the months of April and May were paid under the application.
The June payment was not made when due, nor within the 31 day grace period thereafter. On August 18, 1963, the insured signed an application for reinstatement of the policy which was approved on September 16. The application shows that premium payments for the months June, July and August were made under the application.
Plaintiff testified that the September premium payment was made in cash and within time to defendant's agent.
The October premium was not paid when due nor within the 31 day grace period thereafter. However, by check dated November 23, 1963, and enclosed in an envelope postmarked November 26, premium payments in the amount of $32.30 were forwarded to defendant.
Plaintiff testified that this check covered premiums for the months October and November. Defendant's contentions, as set forth in the pre-trial order, were that the check represented premium payments for the months of September and October and that on November 29 the defendant wrote to *157 the insured acknowledging receipt of the check but stated that the policy had lapsed and that defendant's agent would get in touch with the insured regarding reinstatement.
Plaintiff testified that in the month of December, just before the holidays, defendant's agent came to the Bruni home and asked for the December premium payment. Plaintiff tendered him the amount of the premium in cash but the agent refused to accept it. He said that he had not yet cashed the check for the October and November payments and that he wanted a single check for the premium payments for the months of October, November and December. Plaintiff told the agent that she did not have enough money in her checking account to make out a check in that amount, whereupon the agent said that he would be back after the holidays. He left with Mrs. Bruni the uncashed check for $32.30. Mrs. Bruni denied that the agent told her that another application for reinstatement would have to be filed.
Mr. Bruni died on December 30, 1963. When plaintiff made a claim for the proceeds of the policy the company refused payment on the ground that at the time of Mr. Bruni's death the policy had lapsed for non-payment of premiums. This suit followed.
At trial, and upon the completion of plaintiff's presentation of evidence, the trial court granted defendant's motion for a dismissal of plaintiff's suit on the ground that the evidence showed that the policy was in default and no evidence of waiver was presented. As heretofore noted, plaintiff appeals.
Accepting plaintiff's testimony at face value, it is undisputed that on December 30, 1963, when Mr. Bruni died, premiums on the policy due October 19, November 19 and December 19 remained unpaid. It is also undisputed that on November 23 or 26, when the check for $32.30 was mailed to defendant, the October payment was in default and the 31 day grace period for paying it had expired.
Plaintiff claims that defendant waived its right to a strict enforcement of the policy provisions by its conduct since *158 on previous occasions premium payments were accepted late and beyond the grace period. Plaintiff concedes that applications for reinstatement were made by the insured and approved by defendant on these occasions. However, it is argued that according to plaintiff's testimony defendant's agent had these applications signed in blank without explaining their nature or meaning with the result that reinstatement was not treated by the parties as a condition precedent to the acceptance of premiums beyond the grace period, nor were the applications treated as conditions precedent to the continuation of the life of the policy.
We see no basis for a claim of waiver. On each occasion when the premium remained unpaid beyond the grace period the policy was treated as having lapsed and an application for reinstatement was required. Rather than a waiver, the proofs indicate strict adherence by defendant to the provisions of the policy.
Plaintiff argues that the October 19 and November 19 payments were properly tendered and were retained by defendant until the middle of December, continuing the policy in full force and effect until the death of the insured. This is not the fact. The grace period for making the October 19 payment expired 31 days thereafter. Even on plaintiff's own story, no tender or payment of this premium was made by November 19. At that time the policy lapsed and premiums tendered thereafter could not revive the policy in the absence of reinstatement.
Plaintiff testified that when the agent came to her home in late December he did not tell her that another application for reinstatement would have to be filed but merely said he would be back after the holidays. However, as heretofore noted, the policy specifically provided that no agent had the authority to extend the time for payment of a premium or to waive a forfeiture.
We agree with the trial court that on plaintiff's own proofs it appeared that the policy had lapsed prior to Mr. Bruni's *159 death and no competent evidence of defendant's waiver of the lapse terms of the policy was presented.
Affirmed.
CARTON, J.A.D. (dissenting).
In my opinion the evidence created a question of fact as to waiver on the part of defendant-insurance company which required the company to interpose a defense.
Substantively the effect of the dismissal of the action at the conclusion of plaintiff's case was to frustrate her reasonable expectations as a layman unversed in insurance provisions and to bring about a forfeiture under the policy not compelled by the evidence. Procedurally and practically it served to camouflage the basic issue by permitting to remain undivulged relevant evidence as to conduct of the insurer and its agents which could not fail to shed light on the waiver issue, as well as on the veracity of plaintiff's testimony.
It is conceded by both parties that the monthly premium on the $16,000 policy on the life of decedent, purchased in October 1962, was paid up to and including the month of August 1963. What happened after that date and the significance of those events is sharply disputed.
It is clear from our analysis of the evidence that at the time the defendant-insurance company received the $32.30 check from the assured, dated November 23, 1963, and retained it for approximately two weeks, it did so under the impression the assured owed it three monthly premium payments for September, October and November 1963 and on the premise that he had, in fact, paid only two payments consisting of the September and October or the October and November payments. Its conduct thereafter, including the episode in December, stemmed from this conclusion that plaintiff had not, as she consistently testified, made all three payments. Solely because the company thought and acted in accordance with the premise that one payment was missing which was necessary to make the payments of premiums current was the policy not reinstated. Instead of returning *160 the check, which it believed was insufficient, the company retained it, meanwhile instructing its agent to obtain the additional premium it deemed necessary to make the payments current and to arrange for the reinstatement.
The ensuing discussion between the assured's widow and the insurance company's representative Fiore early in December 1963 reflects the confusion on the part of plaintiff at the trial and was apparently the product of the agent's demanding payment which he thought was due for September 1963, but which plaintiff believed was for the December 19 payment not yet due. As the plaintiff testified concerning that episode, the discussion between her and the agent concerned entirely the payment being demanded by Fiore and never arrived at a stage where plaintiff was required to sign the reinstatement form which Fiore had with him.
According to plaintiff, Fiore broke off the discussion without presenting any document for signature and left with the stated intention of returning after the holidays. Had the company and its agent not insisted on receipt of that additional payment as a condition of reinstatement, it is clearly inferable from defendant's conduct that the reinstatement form would have been signed by the assured or plaintiff prior to the assured's death in the same manner as the three others had been signed.
If plaintiff's claim that she paid the September payment was true, there was, of course, no justification at all for the demand for an additional payment as a condition for reinstatement. Nor was there anything in the record to suggest that there was any other impediment to reinstatement except the simple failure of the assured or his wife to affix a signature to a form which Fiore had brought with him. Since, according to plaintiff, Fiore had not discussed this question with the assured or plaintiff, Fiore's conduct deprived plaintiff of any opportunity of complying with the very condition upon which the company now relies for declaring a forfeiture.
If this analysis is correct, the crucial question in determining whether defendant's conduct rises to the level of a waiver *161 is whether the company was demanding as a condition for reinstatement, the payment of an additional premium which had already been made. The resolution of this dispute of fact upon which the entire issue of waiver hinged was removed from the province of the jury by the trial court's dismissal of the plaintiff's action, and at a stage of the trial which denied to the court and the jury an opportunity to consider evidence on the part of a party in a position most likely to shed light on the transaction. This is so irrespective of which particular payment the insurance company thought was overdue and irrespective of the confusion on plaintiff's part that she was being asked to make a December payment rather than one for an earlier month.
Let us now review the evidence to ascertain whether it supports this conclusion.
Defendant does not dispute that on or about November 23, 1963, the decedent forwarded a check to it in the sum of $32.30 representing the premiums for two months. A letter dated November 28, 1963, which the company allegedly wrote decedent, said:
"We received your check in the amount of $32.30, but this policy has lapsed by its terms, and we will have to have our agent get in touch with your [sic] regarding the reinstatement of this policy.
He will be in touch with you shortly."
Appended to the company's copy of the letter was this instruction to its agent, Mr. Fiore:
"Please try to have this policy reinstated. We are enclosing the insured's check in the amount of $32.30, but we will need another month and a 9615 completed." (emphasis supplied)
Plaintiff-widow denied knowledge of this letter and denied knowing whether her husband received it. However, since the letter was marked in evidence its contents may be considered as to the issue of waiver and as evidence of defendant's conduct and intention. It is evident from this letter and the *162 memorandum that the company itself desired the policy reinstated, intended that it be done promptly, and directed its agent to attempt to effect the reinstatement.
Of vital significance on the issue of waiver is the fact that the company retained the check for the premiums and pursued a course of conduct thereafter consistent with its announced desire to reinstate the policy if the additional payment thought to be in default was made. The statement in the memorandum to Mr. Fiore, "but we will need another month,"[1] eloquently voices the company's position at that time that one monthly premium was unpaid and payment thereof was the prime motivating consideration for a reinstatement to become effective upon the completion of its form 9615.
Accordingly, and as also set forth in the pretrial order, when Mr. Fiore called upon plaintiff and decedent early in December 1963 he reported the company's insistence that the reinstatement "would require the payment of an additional one premium over the amount of $32.30."
Plaintiff testified that her husband made a $16.15 payment for the month of September to Fiore when they were at her mother-in-law's home in Runnemede. She said further that, because she did not have the book with her at the time, "John said he would be around to the house to get the October *163 payment and he would also fill in the coupon." Her explanation of the November 23, 1963 check was as follows:
"Because John didn't come for September to write in on my book, I had paid him outside of my mother-in-law's and when he didn't come in October and November then I mailed it and made the 32 dollar, 30 cent check and took out the three coupons and sent them in."
These coupons, she said, were for the months of September, October and November, but the check mailed to the insurance company was for the October and November payments.
Plaintiff declared that when Fiore came to her home in December, "he said he had come for the payment;" that "he said he had not cashed in the October and November check yet, and that he wanted a check for three payments." Asked whether Fiore had said why he hadn't cashed the October-November payment check, she replied: "No, he just say he wanted to send in all three payments." She said further that she offered Fiore $16.15 in cash for the December payment but he refused it. "He wanted one check, and I didn't have enough money in the checking account." "He said he wanted a check for all three payments and that since I couldn't do it he will be around after the holidays."
When she was asked on cross-examination as to whether she was requested to sign some form in December (presumably the company's reinstatement form 9615), she answered that Mr. Fiore "had the check with some papers. Now what the papers were, I don't know, we never got to that."
It is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely. Since provisions for payment of premiums and reinstatement are considered to be for the benefit of the insurer, they may likewise be the subject of waiver, thus rendering the insurance company liable for loss occurring during a time when, according to its contract, it would be relieved of liability. See Graham v. Security Mutual *164 Life Insurance Company, 72 N.J.L. 298 (E. & A. 1905); 16 J.A. Appleman, Insurance Law and Practice [hereinafter cited as Appleman], § 9083 (1944), and see Annot., 7 A.L.R.3d 414 (1966). Cf. Ciccone v. The Colonial Life Insurance Company, 110 N.J.L. 276 (E. & A. 1933) holding that an insurer which refused the tender of a premium payment because the assured had failed to make timely payment and on this basis declared the policy had lapsed, was precluded in a later action on the policy from urging it had lapsed on another ground not asserted in declaring the default.
A waiver of a forfeiture clause is predicated upon the acts or conduct of the insurer with knowledge of a breach tending to show a recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach. See 16 Appleman, § 9084. Because the courts are loathe to enforce forfeitures, it is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman unversed in insurance provisions, to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice. See Allen v. Metropolitan Life Insurance Company, 44 N.J. 294, 305 (1965).
If it be assumed that the evidence established the September payment, in fact, had already been made when defendant's agent in December requested the additional payment as a condition of reinstatement, it would seem that improper exaction should by itself and without more preclude the insurer from insisting on the completion of the reinstatement form. This is especially so in the absence of any suggestion by the insurer that the state of health of the insured or his wife and dependent children was such as to render them uninsurable at that time, or that he could not have truthfully replied to the inquiries contained in the form in precisely the same manner that he had answered the prior ones.
The requirements of the company's reinstatement form cannot, of course, create obligations on the part of the insured *165 greater than those specified in the policy since the policy and the application by the terms of the standard policy provision constitute the entire contract. In this connection, it may be noted that the portion of the reinstatement provision of the policy concerning insurability provides:
"This policy may be reinstated within three years after default in premium payment upon the following conditions:
(1) Production of evidence satisfactory to the company of the insurability of all of the insured, said wife and dependent children; * * *"
The policy contains no provision setting forth what such evidence might be nor does it contain any specific reference to the manner in which it shall be produced. Specifically, there is no indication as to which agent of the company will make this determination nor under what circumstances the company will inform the assured the policy has been reinstated. We note that in the present case only one of the three reinstatement forms which were actually completed indicates that the home office took any action towards the reinstatement, the others being "approved in the field" as the notation thereon shows.
Irrespective of whether the insurer's denial of a premium already paid may be deemed sufficient of itself to constitute a waiver, if the test laid down in Allen is applied of viewing the acts of the insurer from the standpoint of the assured and plaintiff, there were reasonable grounds for a jury to infer from the insurer's conduct that the company had no intention of exacting a forfeiture for the five day delay in the receipt of the premium due November 19, 1963.
According to plaintiff's version of the course of conduct between the parties, the relationship between the agent Fiore and the assured and his wife was a friendly one, the agent sometimes calling at nine or ten o'clock at night. Payments were made (sometimes in cash) directly to Fiore who was authorized by the terms of the policy to receive such payments. The coupon receipts admitted in evidence reveal that he *166 did, in fact, receive payments and acknowledged their receipt as the authorized company representative.
On at least three separate occasions, it was Fiore who brought the reinstatement forms for signature, which, according to plaintiff, were submitted in blank. Plaintiff asserted that no cancellation notice or notice of lapse was ever received from the company, nor any notification or explanation that the payment had to be approved by the home office in order to keep the policy in force.
According to plaintiff, she paid Fiore for the September payment in cash when he called at the home of her mother-in-law and she expected him to receipt the September payment when he came around to collect the October payment. When he failed to call for the October and November payments, she mailed the November 23 check with the three coupons to the Haddon Heights office. Not having heard either from the insurance company or its representative Fiore, and not receiving a return of the check until Fiore brought it back in December, an assumption that the three payments were received and retained by the company without regard to a literal insistence upon the completion of the reinstatement forms seems entirely reasonable. There can be no question that she believed she was covered by the policy during this period.
It should not be overlooked that when Fiore visited the Bruni household early in December the decedent, a man 27 years of age, was still alive and apparently still in good health and the company anxious to have the policy reinstated. Looking at this episode also from her viewpoint, although she had paid the premium for September in cash, the insurance company was demanding another payment of premium in a check form which she was unable to provide. Here again, if plaintiff is believed, Fiore refused to take in cash payment of the premium he requested and insisted on a check for $48.45 representing the check which the company had and deemed satisfactory in form, plus another check which the company was not entitled to demand.
*167 We do not have the benefit of Fiore's testimony on this crucial phase of the case, nor the benefit of the inspection of the reinstatement form he brought with him according to the company's records. If that form was filled in in the same fashion as the other reinstatement forms which were introduced into evidence, it should affirmatively establish the due date the company actually asserted as the basis for lapse for non-payment. It may well explain also the obvious misunderstanding between the agent and plaintiff as to what payment he sought as a prerequisite to reinstatement and provide an explanation for his leaving the check with the plaintiff without having the reinstatement form executed. In any event, if plaintiff's story is believed, Fiore's departure and failure to present the reinstatement form for signature prevented the plaintiff and the assured from fulfilling these conditions upon which defendant now predicates its right to forfeit the policy. Under the doctrine of waiver as it is interpreted by our courts the insurer may not relieve itself of a liability which arises by reason of the assured's death thereafter.
The majority conclude that there exists no basis for a claim of waiver because the proofs show that the company required an application for reinstatement on each occasion the premium remained unpaid beyond the grace period. The majority assert that since there was no tender or payment of premium by November 19, "At that time the policy lapsed and premiums tendered thereafter could not revive the policy in the absence of reinstatement." This statement poses the issue whether the company's retention of the premium and its course of conduct thereafter was such as to constitute a waiver of the company's right to declare a forfeiture. However, it does not provide an answer to that inquiry.
The thesis of the majority that there was no waiver seems to rest heavily on the policy provision that no agent had the authority to extend the time for payment of a premium or to waive a forfeiture. This argument likewise fails to come to grips with the waiver issue. As we read the record, *168 there can be no dispute that he had authority to follow the course of conduct attributed to him. Here, if plaintiff's version of the December episode is believed, the agent whose demand for the additional payment created the controversy existing at the time of the insured's death acted at the specific direction of the insurer. The company cannot escape responsibility for the agent's conduct arising out of that agent's compliance with its directive. It therefore becomes critical to determine whether he failed to have the reinstatement form signed because of the company's insistence upon performance of a condition to which it was not entitled or for some other reason which may be ascribed to plaintiff's action.
I would reverse the judgment below and remand the matter for a new trial.
NOTES
[1] From the record it is not entirely clear whether the defendant contended it was the September payment of $16.15 which was unpaid or the payment for another month. In its answer it asserted that the September and October payments were not paid. In the pretrial order, however, it took no affirmative position as to which payment was in default, alleging merely that the defendant's representatives, in the early part of December 1963, called upon plaintiff and decedent regarding the lapse "and stated it was necessary again to apply for reinstatement which would require the payment of an additional one premium over the amount of $32.30." The company's letter of November 29, 1963 to the assured contains the notation, "Due September 19, 1963." Counsel for the insurance company on the motion for dismissal asserted that perhaps the September payment could be called in dispute.