DOUGLAS P. BONNET, *ET AL.*, PLAINTIFF-RESPONDENT v. ALEXANDER H. STEWART, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT v. NATIONAL EMBLEM INSURANCE CO. THIRD PARTY DEFENDANT-APPELLANT.

Argued May 12, 1975—Decided September 12, 1975.

*Mr. W. Stephen Leary* argued the cause for appellant (*Messrs. O'Donnell, Leary and D'Ambrosio,* attorneys).

*Mr. Jerome S. Lieb* argued the cause for respondent Bonnet, et al. (*Messrs. Lieb, Teich and Berlin,* attorneys).

*Mr. David S. Cramp* argued the cause for respondent Stewart (*Messrs. Schenck, Price, Smith and King,* attorneys; *Mr. David S. Cramp* and *Mr. Stephen G. Sepaniak,* on the brief.

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. Plaintiff Bonnet was seriously injured while riding a bicycle on October 7, 1972, as a result of a collision with an automobile driven by defendant third-party plaintiff Stewart. The latter brought a third-party claim for a declaratory judgment against National Emblem Insurance Company ("insurance company" or "company") seeking a determination that he was covered for liability on the date of the accident on an automobile policy issued by the company. The coverage case, which was tried to a jury before trial of the negligence action, resulted in a judgment of coverage as a matter of law by the trial court after submission of all the proofs. The present appeal is from that judgment. It was certified by this court while the appeal was pending unheard in the Appellate Division. *R.* 2:12–1. We have concluded there were material

issues of fact which should have been submitted to the jury, and we therefore reverse.

The company's position is that the policy had been cancelled by it for non-payment of premium prior to the accident. The trial court held for the insured on two grounds: (a) the company received and retained a premium payment from Stewart after the accident, thereby waiving the prior breach of the insurance agreement constituted by the failure to pay the premium on time; (b) the company retained control of the investigation and defense of the accident claim for a substantial time after knowledge of the facts claimed to warrant its denial of coverage. This was another waiver of the defense of non-coverage.

At the time of the accident Stewart was in the third year of coverage by this company, which is a subsidiary of Allstate Insurance Company. The current policy year was January 17, 1972 to January 17, 1973. By agreement of the parties the premium of $603 was payable in three installments, a down payment of $241.70, a second installment of $182.30 on April 17, 1972, and a third and final payment for the balance on July 17, 1972. The first two payments were made by the insured, the second one a month after its due date. The company's practice is to send a notice of payment about 14 days prior to the due dates and also to send a reminder letter about a week after such dates if the payment has not been received. The effective date of cancellation for non-payment of the July 17 payment was October 1, 1972. The company sent Stewart a notice two weeks prior thereto informing him the policy would be cancelled October 1, 1972 if payment were not received by that date.

The third premium payment was received by the company October 11, 1972. The payment check was dated September 29, 1972. Stewart testified he called the Allstate office on Monday, October 9, 1972 to give notice of the accident and was then informed that he was not insured. Thereafter, he spoke with Mr. Cullen of Allstate who told him his premium payment had not been received, but that the company would

investigate the accident. During a second conversation with Cullen, Stewart was informed that his premium check had been found and that the company would cover the accident. A few days later Cullen telephoned him to say he was not insured at the time of the accident. Stewart then received a $14.40 rebate check dated October 16, 1972 from the company purporting to reflect his non-coverage from October 1 to October 11, 1972, the remainder of his payment being applied to forward coverage. He promptly returned the check, asserting he regarded himself as covered at all times. After receiving the summons and complaint in the negligence action in January 1973 Stewart took the papers to Allstate's office and left them there. On April 3, 1973 he received a letter from Allstate disclaiming coverage and returning the suit papers.

Stewart's wife testified she mailed the third check with the payment notice to Allstate on September 29, 1972. In January 1973, at Cullen's previous request, she brought him other cancelled checks from the check book containing the premium check which he photocopied, but she could not find the one numbered immediately prior to the premium check. (The premium check was numbered No. 197). Photocopies of checks No. 197 and No. 198 were admitted in evidence at the trial. Mrs. Stewart denied that the date and month of check No. 198 had been altered, but she did not know its whereabouts. She identified a copy of check No. 196 dated October 7, 1972, explaining her husband had had it in his pocket a week before using it.

An expert examiner of questioned documents testified on behalf of the company that the date on check No. 197 had been overwritten and that the date on check No. 198 had been altered from October 10, 1972 to September 30, 1972.

Mr. Cullen, a claims supervisor for Allstate, testified that the file on the case contained a notation that coverage was cancelled October 1, 1972. He told Stewart a few days after the report of the accident that the policy had been cancelled for non-payment of the premium. A few days later he in-

formed Stewart that the premium check had been found. Their next conversation was when the Stewarts brought the refund check to him. He took the check and said he would investigate the situation. Shortly thereafter he requested them to bring in their cancelled checks. Mrs. Stewart at first brought in only check No. 197, (the premium check) but it appeared to Cullen that "September" had been written over. He requested that the Stewarts furnish him the checks preceding and following the premium check. Some, but not all of those checks, were submitted to him on January 24, 1973.

Cullen admitted that the "road work" on the liability investigation of the accident was completed October 17, 1972, but no reservation of rights letter was sent to the Stewarts. As of January 24, 1973 the matter of coverage was still "up in the air" inside the company.

A Mr. Hocking, employed in the accounting department of Allstate, testified it was company policy to deposit all checks on the day of receipt in order to immediately invest the money on the West Coast. Another Allstate employee, Nayman, supervisor in the data processing department, testified there is a company policy to allow a 21 day grace period on renewal policy payments. After a cancellation, however, an insured would have 40 days to make payment to continue the policy in effect, with a lapse in coverage until the premium is received. After the 40 days the policy would be terminated. These company policies are not set forth in the insurance policy. The witness agreed that the prorated rebate in this case should have been $16.50, not $14.40 as tendered by the company. The discrepancy was not explained except for the suggestion of counsel as to deduction of a service charge.

I

The trial court's first basis for holding the plaintiff and the insured as a matter of law was that the company's retention of Stewart's premium payment was unjustified by

the company's contract with him or by the negotiations over the payment and the rebate between them, and therefore must be deemed to have constituted a waiver of any prior default or forfeiture by the insured, citing *Ciccone v. Colonial Life Ins. Co.*, 110 *N. J. L.* 276 (E. & A. 1933) and *Kozloski v. Prudential Ins. Co.*, 95 *N. J. L.* 101 (E. & A. 1921).

A "waiver" in the sense of the present controversy can be found if the conduct of the insurer after information of fraud or breach of contract is such as to justify an inference of affirmation rather than rescission of the contract. *Merchants Ind. Corp. v. Eggleston*, 37 *N. J.* 114, 130–131 (1962). If a fact-finder could reasonably either draw or reject such an inference on a given set of facts, the issue is one of fact, not law, and in a jury trial should not be withdrawn from determination by the jury. We think that was the case here.

Before receiving the Stewart check on October 11, 1972 the company reaction to the notice of the accident was that the coverage had terminated for non-payment of the premium within time. A fact-finder could properly find that after receipt of the check the company was undecided about its attitude toward reinstatement of the coverage retroactively until it had an opportunity to complete an investigation as to whether the payment had or had not been sent in by the insured prior to October 1, the specified cancellation date. Pending such a determination, and in order to protect the insured as to future accidents while not prejudicing its own reserved position as to coverage of the October 7 accident, the company — or so a jury could fairly conclude — reasonably retained so much of the received premium as would protect the insured prospectively and returned the portion not earned by the company during the lapse period, conformably with its general policy with respect to cancellations. See *Forrester v. State Farm Mutual Insurance Company*, 97 *Ga. App.* 618, 103 *S. E.* 2d 619, 622–623 (Ct. App. 1958); *State Farm Mutual Automobile Insurance Company v. Moore*, 104 *Ga. App.* 194, 121 *S. E.* 2d 286, 288 (Ct. App. 1961). (The fact

that the rebate check was mistakenly inadequate does not equate, as a matter of law, with a situation where it had not been tendered at all). And whether the company's investigation was unreasonably protracted was a matter for the jury.

These potential appraisals of the circumstances by a jury are consistent with a conclusion of absence of affirmation of retroactive coverage through the company's retention of the premiums. They are inconsistent with the insured ever having a justified impression that the company was intending to cover the accident. Stewart never asked for a return of his money. It could reasonably be inferred that, if he knew the company was withholding judgment on coverage, he would prefer to have his insurance continue prospectively rather than let it lapse by return of his payment, at least in the absence of a contrary indication by him.

We find nothing in the facts justifying a holding for plaintiffs *as a matter of law* on the asserted theory of offer and acceptance of a proposal to cover Stewart retroactively by retention of his payment.

In *Ciccone, supra,* an insurer received and kept a life insurance premium *before* a loss, although after a lapse for non-payment. Retention of the payment under such circumstances was not consistent with any conclusion but affirmation of the contract and waiver of the premium lapse.

In *Kozloski, supra,* also a life insurance case, the insurer received and retained a late premium sent the company after the death of the insured. The company retained the payment even after learning that the insured died during the lapsed period. In other words, there was no factual basis on which the insurer could have been retaining the payment consistent with rescission of the policy obligation. See 95 *N. J. L.* at 103–104.

We have considered the out-of-state cases relied upon by respondents. They are all distinguishable on their facts from the case before us. Contrast the New Jersey cases which emphasize that ordinarily it is a fact question whether retention by an insurer of a premium paid after a lapse evidences an in-

tention to cover an intervening loss. *Barbera v. John Hancock, etc., Ins. Co.*, 127 *N. J. L.* 122, 125 (Sup. Ct. 1941); *Bohles v. Prudential Ins. Co.*, 84 *N. J. L.* 315, 317 (E. & A. 1913).

We thus conclude that whether the retention of the premium under the circumstances here obtaining constituted a waiver of the cancellation of coverage by the company was an issue for the jury, not the court.

## II

The alternative ground of decision by the trial court was waiver by reason of retention of control of the investigation and defense of the negligence claim by the company without a reservation of rights agreement with the insured. The court relied upon *Merchants Ind. Corp. v. Eggleston, supra.* We cannot agree that *Eggleston* renders the instant case a proper one for a conclusion of waiver as a matter of law.

In *Eggleston*, the insurer sought to disclaim coverage on the grounds of fraud of the insured in misrepresenting the identity of the true owner of the car. The accident occurred May 12, 1958. The negligence action was instituted in October 1958. On November 17, 1958, an attorney engaged by the insurer filed an answer. The company filed its declaratory action averring disclaimer on January 5, 1959, and the insureds were served in late February. The court pointed out that nine months had elapsed since the company had received all the facts relevant to the alleged misrepresentation from the insured, the insurer continuing all the while with the defense of the accident suit. 37 *N. J.* at 125–126. The controlling rule was stated as follows (37 *N. J.* at 131):

"In short, if a carrier received information suggesting fraud or breach of contract, it must seek the facts with reasonable diligence, and having acquired them it must within a reasonable period decide whether to continue to perform. What is a reasonable time depends upon the circumstances."

See also *Sneed v. Concord Ins. Company*, 98 *N. J. Super.* 306, 317 (App. Div. 1967).

Applying the rule thus formulated to the facts at hand leaves us with the clear conviction that it was for the jury, not the trial court, to say whether the insurer sought the facts as to lapse of coverage with reasonable diligence and as to whether its unequivocal repudiation of coverage on April 3, 1973 was within a reasonable time after ascertainment of the facts, notwithstanding its intervening retention of control of the investigation and defense of the accident claim. It could here be found that the insured did not supply all the information required by the company on coverage until the end of January 1973 or later. In the light of the delay by the Stewarts in providing copies of all the checks needed by the company to verify the validity of the assertion that the premium had been paid on time, we cannot agree with the trial court's holding that there was a waiver as a matter of law.

In passing, we note our disagreement with the company's contention that if there was fraud by the insured there can be no remedy on the policy under any circumstances. It is implicit in *Eggleston, supra,* and similar cases, that the insurer will be held to have waived fraud if its conduct, after knowledge of the facts constituting the fraud, amounts to an affirmation of the contract or a pre-emption of the investigation and defense of the third party claim for an unreasonable time. 37 *N. J.* at 130, 131.

### III

Stewart makes the additional contention that the policy was not cancellable, for failure to pay a premium, short of the full policy year terminating January 17, 1973. He relies on the terms of the extension certificate, which reads as follows:

"This Extension Certificate extends your policy, with respect to the below described automobile, for the period shown provided, however, that the premium indicated (either the total premium or amount of first payment shown below) is paid in advance of the Extension Period, also shown below. The coverages included under this cer-

tificate are only those indicated by an entry in the 'Premiums' column and *such coverages are subject to all the provisions of your policy* and all endorsements thereto." (emphasis added).

The position is that since the first installment was paid at a time satisfactory to the company the literal terms of the certificate guarantee coverage absolutely until January 17, 1973. The company, however, calls attention to the second sentence of the certificate and particularly to the emphasized language rendering all coverages subject to all the provisions of the policy. One of those provisions is the company's absolute right of cancellation under Section 16 of the Conditions of the policy. This reads:

"16. Cancellation.
This policy may be cancelled by the insured named in Item 2 of the declarations by mailing to the company written notice stating when thereafter the cancellation shall be effective. *This policy may be cancelled by the company by mailing to the insured named in Item 2 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective . . .*" (emphasis added).

The company asserts that since it is not here denied that a notice of cancellation in accordance with the foregoing was sent the insured by the company, such cancellation supersedes the otherwise absolute extension of the coverage by the certificate for one full year. We think the position stated is solidly grounded. While a cancellation based upon non-payment of premium is probably ineffective if the premium was in fact timely paid, see *Kubeck v. Concord Ins. Co. et al.*, 103 *N. J. Super.* 525, 534 (Ch. Div. 1968), aff'd o. b. 107 *N. J. Super.* 510 (App. Div. 1969), we must assume, for purposes of this point, that the third installment of premium was not paid on time. The position urged by Stewart is therefore found to lack merit.

IV

The company complains of the exclusion at trial of its offer to show through another policyholder another instance of

the company practice of rebating for a period of non-coverage from a premium payment received from an insured after lapse — in that case without an intervening accident.[1] We find no error. One instance would not establish habit or custom under *Evid. R.* 50. Moreover, factors peculiar to the particular insured might well dictate the nature of the company approach in a particular case, and the danger of confusion of issues is evident. See *Evid. R.* 4.

## V

█ The trial court allowed the third party plaintiff to read in evidence portions of the deposition of Mr. Hocking, an accounting department supervisor of the company. This is claimed to be error as Hocking was not an officer or managing agent of the insurer. *R.* 4:16–1(b). However, there seems to be some basis in the record to support plaintiff's contention that the company produced the witness pursuant to a request of plaintiff, under *R.* 4:14–2(c), for production of a person within the corporation who had knowledge of the matters in question. The use of the depositions of such a person is provided for by *R.* 4:16–1(b). Moreover, some discretion in the matter was exercisable by the trial judge.

## VI

The company argues it was error to allow the third-party plaintiff a counsel fee, notwithstanding the permissive provision of *R.* 4:42–9(a)(6), allowing fees "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." The contention is that judicial discretion should have been exercised adversely to the claimant in view of the clear evidence of fraudulent misrepresentation by the insured, citing *Felicetta v. Commercial Union Ins. Co.,*

\

[1]The materiality of the company practice or policy in this regard is dealt with in Point I hereof.

117 *N. J. Super.* 524, 528 (App. Div. 1971), certif. den. 60 *N. J.* 141 (1972).

In view of our disposition of this appeal, we need not pass upon the question presented. For the guidance of the court at the retrial, however, we indicate our approval of the principles stated in *Felicetta, supra.*

Reversed and remanded for a new trial. The retrial should be expedited since trial of the accident claim awaits disposition of the coverage question.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER and Judge CONFORD—6.

*For affirmance*—None.