112 N.J. Super. 332 (1970)
271 A.2d 292
ENGLISHTOWN AUCTION SALES, INC., ETC., PLAINTIFF-RESPONDENT,
v.
MOUNT VERNON FIRE INSURANCE COMPANY, A CORPORATION OF THE STATE OF PENNSYLVANIA, ET AL., DEFENDANTS, AND QUAKER AGENCY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1970.
Decided November 24, 1970.
*333 Before Judges LEWIS, MATTHEWS and MINTZ.
*334 Mr. Charles W. Cipolla, attorney for appellant Quaker Agency, Inc.
Messrs. Stout, O'Hagan, DeVito & Hertz, attorneys for respondent (Mr. William J. O'Hagan, Jr. on the brief).
The opinion of the court was delivered by MINTZ, J.A.D.
This is a declaratory judgment proceeding in which plaintiff in a jury trial sought a determination that there was insurance coverage in effect with defendant Mount Vernon Fire Insurance Company, a Pennsylvania corporation (Mount Vernon), on September 2, 1967 when an automobile accident occurred on its premises. As a consequence of that accident several law suits were instituted against plaintiff. At the close of the trial the court granted plaintiff's motion for judgment against Mount Vernon and its general agent Quaker Agency, Inc. (Quaker) declaring the policy to be in force and effect on the stated date. Quaker's motion for a new trial was denied and it appeals therefrom. Mount Vernon did not join in the appeal.
Plaintiff maintains business premises in Englishtown and its broker ordered an insurance policy through Quaker which, as general agent for Mount Vernon, issued an "Owners', Landlords' and Tenants' Liability Policy" for a one-year period commencing April 18, 1967. The total premium amounted to $2,678. Efforts to collect this premium from plaintiff were unsuccessful. On June 2, 1967 plaintiff wrote Quaker:
We presently have a policy with your company which is up for renewal.
With deep regret we must ask for a temporary lapse in the renewal of this policy, due to current financial conditions.
This lapse in time will be for a period of three to six months. At which time we expect to continue the current policy and pay its premium. We are also aware of the extreme risk involved by taking such action.
Will you please advise us immediately as to the affect (sic) of such action with your company and if this temporary lapse in the policy is acceptable by your company.
*335 Upon receipt of said letter Frank S. Walsh, who controls and operates Quaker, called Sobechko, president of Englishtown. Walsh testified that he advised Sobechko that it would be unwise to be without coverage and inquired as to what action he was taking with his bank to procure financing for the payment of the premium. According to Walsh the premium was to be forwarded by plaintiff's bank by July 1, 1967. It was not received. Thereafter a cancellation notice, dated July 6, 1967 and effective July 17, 1967, was mailed to plaintiff by Quaker for Mount Vernon. The notice recited that the cancellation was at the broker's request for nonpayment of premium. The broker testified that he made no such request.
Walsh testified that on or about July 11, 1967 he received from plaintiff two checks each for $500, one dated July 8 and the other July 17. They were deposited in Quaker's bank account in a Newark bank. One check cleared and the other was returned for insufficient funds. A few days later he drove to Freehold and had the check certified, thereafter redepositing it to Quaker's account. The $1,000 was retained by Quaker. Significantly, Walsh never communicated with plaintiff after receipt of the $1,000 and admitted that his company never rendered an accounting to plaintiff for that sum or offered to return any unearned premium, either on a pro-rata or short-rate basis. Walsh testified that he computed the premium on a short-rate basis and that there was $62 remaining, which he applied to his effort and expenses in getting the $500 check certified.
Judge McGowan, in a comprehensive oral opinion, concluded on the motion for judgment that the receipt and retention by Quaker of the partial payment constituted a waiver of the previously issued cancellation notice by the insurance company and that the policy was in full force and effect on September 2, 1967. On the motion for a new trial the same ruling was made by the trial judge.
We agree with these determinations. We are satisfied that, accepting as true the evidence together with all legitimate *336 inferences to be drawn therefrom in favor of Quaker, reasonable minds could not differ and that as a matter of law plaintiff was entitled to the requested declaratory judgment. Dolson v. Anastasia, 55 N.J. 2 (1969).
Initially, we note that there is no merit in the contention that Quaker is not an aggrieved party lacking standing to appeal. Mount Vernon filed a cross-claim for indemnification against Quaker. Hence Quaker is vitally interested in the result.
We agree with the trial court's ruling that plaintiff's letter did not constitute a cancellation of the policy, but rather an inquiry respecting the effect and acceptability of a temporary "lapse." Paragraph 20 of the policy provides that it may be cancelled by the insured "by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective." The policy was not surrendered and no date was specified when the alleged cancellation was to become effective. Clearly, the insurer did not regard plaintiff's letter of June 2, 1967 as an effective notice of cancellation, for on July 6, 1967 it forwarded its cancellation notice to plaintiff, effective July 17, 1967.
We are of the view that the insurer endeavored to cancel the policy in accordance with its right to do so under paragraph 20 of the insurance policy, in which instance the earned premium should be computed pro-rata and adjustment made as soon as practical after cancellation becomes effective. On this basis defendant retained $332.64 over and above the amount of the earned premium as of July 17, 1967, which it never offered to return. Nor did it offer to return the sum of $62, the unearned premium improperly computed by Walsh on a short-rate basis. Rather, Quaker, without authority in fact or law, elected to retain said sum of $62 to defray its alleged expenses incurred in securing the aforementioned certification.
The average purchaser of insurance is entitled to the broad measure of protection necessary to fulfill his reasonable *337 expectations. Harr v. Allstate Ins. Co., 54 N.J. 287 (1969). Upon making partial payment of the premium prior to the effective date of cancellation, plaintiff clearly evidenced its intention to avert this result. Plaintiff could rightfully rely upon the retention of this substantial payment as an indication that it need not look for coverage elsewhere and that the insurer would continue the policy in force  not having been advised to the contrary. In these circumstances the insurer may be estopped to deny coverage. Cf. Harr v. Allstate Ins. Co., supra.
In any event, the undisputed facts, especially the retention of the $1,000, constitutes a waiver as a matter of law. As observed in New Jersey Rubber Co. v. Commercial Union Assur. Co., 64 N.J.L. 580 (E. & A. 1900):
Clearly, the defendant could not assert a right to the premium for valid insurance, and at the same time insist that the insurance had never been effected. By claiming and maintaining such a right, with full knowledge of all material circumstances, it unequivocally affirmed the validity of the insurance for the period covered by the premium, and definitively waived every objection on which its validity could be denied. [at 586]
Ciccone v. Colonial Life Ins. Co., 110 N.J.L. 276, 279 (E. & A. 1933), is also in point. The court there said: "By the acceptance of the premium, defendant waived the forfeiture. The policy was thereby revived, and continued to be a valid and outstanding obligation against the insurer. Kozloski v. Prudential Ins. Co., 95 N.J.L. 101."
A similar view was expressed in Bruni v. Prudential Ins. Co. of America, 51 N.J. 408 (1968), where the court adopted the dissenting opinion of Judge Carton in the Appellate Division, 100 N.J. Super. 154, 163-164 (1967). It was there stated:
It is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely. Since provisions for payment of premiums and reinstatement are considered *338 to be for the benefit of the insurer, they may likewise be the subject of waiver, thus rendering the insurance company liable for loss occurring during a time when, according to its contract, it would be relieved of liability. * * *
A waiver of a forfeiture clause is predicated upon the acts or conduct of the insurer with knowledge of a breach tending to show a recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach. See 16 Appleman, § 9084. Because the courts are loathe to enforce forfeitures, it is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman unversed in insurance provisions, to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice. See Allen v. Metropolitan Life Insurance Company, 44 N.J. 294, 305 (1965).
In Bohles v. Prudential Ins. Co., 84 N.J.L. 315, 317 (E. & A. 1912), the court declared that an unconditional acceptance of a premium constitutes a waiver of the default. However, the issue of waiver was held to be a fact issue since the company retained the premium for only three weeks and then returned the same. The case is distinguishable from the instant situation for here there never was a return of any premium. Likewise, in Barbera v. John Hancock Mutual Life Ins. Co., 127 N.J.L. 122 (Sup. Ct. 1941), the insurer accepted and retained premiums in default and did not offer to return same until eight days after the insured's death. Apparently the offer to return said premium raised a fact issue as to whether the company elected to keep the policy in force.
Panizzi v. State Farm Mutual Automobile Ins. Co., 386 F.2d 600 (3 Cir.1967), cert. den. 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1395 (1968), relied upon by defendant, is distinguishable in that it applies the Pennsylvania law of waiver, which is admittedly at variance with the relevant doctrine in other jurisdictions. See Mackie v. Prudential Ins. Co. of America, 148 Pa. Super. 498, 25 A.2d 736 (1942). Furthermore in Panizzi, in addition to the mailing of the cancellation notice effective on a certain date, the insurer included an invitation to the insured to reinstate his policy and stated that the reinstatement would be effective *339 upon payment of the full premium due. Hence, the conduct of the insurer in retaining a partial premium would not lead a reasonable man to believe that the insurance company waived a forfeiture under the contract. Rather, the reinstatement invitation constituted notice to the insured that the policy would lapse if full payment was not made within the prescribed time, and reinstatement would be effective only upon full payment of the overdue premium.
We fail to perceive and do not make the distinction urged by Quaker with respect to the doctrine of waiver  namely, that it may be invoked against the insurer on life insurance policies but not as to insurers issuing liability insurance policies under the Surplus Lines Law, N.J.S.A. 17:22-6.59. This statute requires the surplus lines agent to collect from the insured the full premium at time of delivery of the certificate of insurance. The general rule is that in the absence of an express provision in the policy to the contrary, the actual prepayment of the premium is neither essential for a contract of insurance to be valid nor a condition precedent to the inception of the policy and the assumption of the risk by the insurer. Kromenski v. Meyer, 47 N.J. Super. 434, 441 (App. Div. 1957). Clearly, as already observed, Quaker was at least clothed with apparent authority to receive the partial premium payment. See Kromenski.
Quaker does business only with brokers specializing in the furnishing of insurance coverage on risks rejected by domestic carriers. It is argued that Quaker was not authorized to issue this "surplus line" policy without first collecting the full premium. N.J.S.A. 17:22-6.59. This statute places the burden upon the surplus lines agent to collect the full premium upon delivery of a policy issued by a foreign insurance company unauthorized to do business in New Jersey. Although the general agent did not collect the full premium, such dereliction on its part cannot work to the detriment of plaintiff who accepted delivery of the policy from the general agent. Cf. Wolfstern v. Pennsylvania R.R. Co., 76 N.J. Eq. 78, 80 (Ch. 1909).
*340 There was coverage afforded plaintiff under the policy in question unless effectively terminated by the insurer. On the basis of the undisputed facts we conclude that the cancellation notice dated June 2, 1967 was effectively waived. Since no subsequent cancellation notice was ever sent to plaintiff, the policy was in full force and effect on September 2, 1967.
Affirmed.