## HAGERL v AUTO CLUB GROUP INSURANCE COMPANY

Docket No. 87245. Submitted July 9, 1986, at Lansing. Decided February 17, 1987. Leave to appeal applied.

Virginia L. Hagerl obtained no-fault automobile insurance through Auto Club Group Insurance Company. The policy provided coverage through March 2, 1983. Auto Club sent Hagerl a renewal package and, on March 4, 1983, Hagerl mailed a check to Auto Club to renew the policy. The check was dishonored twice for lack of sufficient funds. Auto Club mailed notices of dishonor to Hagerl on approximately March 9 and 15, 1983. Hagerl claimed that she did not receive notice of dishonor until April 4, 1983. On March 25, 1983, Hagerl mailed a check to Auto Club to cover the second installment of the premium due on the policy. Auto Club cashed that check, deducted a service charge, and attempted to return the remainder of the amount of the second payment to Hagerl on April 25, 1983. On March 29, 1983, Auto Club mailed a letter to Hagerl informing her that her policy had not been renewed because her check was dishonored and that a new policy would have to be written if she wished to reinstate her coverage. Hagerl apparently received this information on April 4, 1983. On April 1, 1983, Hagerl was involved in an automobile accident. She requested that Auto Club provide her with benefits for the damages involved. Auto Club declined. Hagerl filed suit against Auto Club in Saginaw Circuit Court seeking to establish that defendant was required to pay the benefits sought. The court, Gary R. MacDonald, J., granted summary judgment in favor of plaintiff, finding that a valid contract of insurance existed between the parties at the time of the accident because the policy stated that an insured was entitled to ten days notice of

REFERENCES

Am Jur 2d, Insurance §§ 387-392, 443 *et seq.*

Actual receipt of cancellation notice mailed by insurer as prerequisite to cancellation of insurance. 40 ALR4th 867.

Construction, application, and effect of clause that liability insurance policy may be canceled by insured by mailing to insurer written notice stating when thereafter such cancellation shall be effective. 11 ALR4th 456.

cancellation and that Hagerl had not received the requisite ten days notice. Defendant appealed.

The Court of Appeals *held:*

1. Defendant, by sending a renewal package to plaintiff, offered to renew the insurance policy. Plaintiff accepted that offer by mailing her check to defendant. A valid contract was thereby formed.

2. Defendant's notice of cancellation, mailed on March 29, 1983, and received by plaintiff on April 4, 1983, could not retroactively terminate coverage before the date of the accident. Plaintiff was entitled to judgment as a matter of law.

Affirmed.

Cynar, P.J., dissented. He would hold that plaintiff declined to renew the policy by failing to pay the required renewal premium because her check was dishonored. He would reverse.

#### Opinion of the Court

1. Insurance — Renewal Premiums — Dishonored Checks.

A valid contract of insurance was formed where a policyholder accepted the insurer's renewal offer and communicated that acceptance to the insurer by mailing a check for the amount of the renewal premium to the insurer; the fact that the check was subsequently dishonored for lack of sufficient funds does not negate the validity of the contract where the contract language required notification to the insured of nonrenewal at least thirty days before the end of the policy term and no such notice was given by the insured.

#### Dissent by Cynar, P.J.

2. Insurance — Renewal Premiums — Dishonored Checks.

*The mailing of a check in the amount of the renewal premium due on a policy of insurance does not serve to renew the policy where the check is dishonored for lack of sufficient funds and the contract language clearly provides for automatic termination at the end of the policy's term if the insured fails to pay the renewal premium.*

*O'Farrell, Basner, Smith & Popielarz* (by *Thomas C. Basner*), for plaintiff.

*Gromek, Bendure & Thomas* (by *John A. Lydick*), for defendant.

Before: Cynar, P.J., and T. M. Burns and M. E. Kobza,* JJ.

Per Curiam. Defendant insurance company appeals as of right from a circuit court order denying summary judgment in favor of defendant and a circuit court order granting summary judgment in favor of plaintiff pursuant to GCR 1963, 117.2(3) on the ground that there was no genuine issue of material fact and plaintiff was entitled to judgment as a matter of law. We affirm.

On April 1, 1983, plaintiff was involved in an automobile accident which damaged her automobile and a municipal street light pole. The total amount of damages was approximately $3,740. Plaintiff requested that defendant provide her with benefits for the loss, but defendant declined. Plaintiff then filed the present action seeking to establish that defendant must pay the claimed benefits.

Defendant asserted that it was not responsible for payment of benefits because its contract of insurance with plaintiff had expired before the accident took place. Defendant admitted that it had a contract of insurance with plaintiff which provided coverage through March 2, 1983. However, defendant contended that undisputed facts indicated that plaintiff failed to renew her policy and that her coverage automatically expired on March 3, 1983. On the other hand, plaintiff contended that undisputed facts indicated that the parties had a valid contract of insurance which was in effect at the time of her accident. The trial court agreed with plaintiff. We also agree.

Summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), is proper only if there is no genuine issue as to any material fact

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

and the party in whose favor judgment is granted is entitled to judgment as a matter of law. A motion based on GCR 1963, 117.2(3) is designed to test the factual support for a claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561 (1983), lv den 417 Mich 1100.15 (1983). The court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by evidence at trial because of some deficiency which cannot be overcome. *Id.* The court must give the benefit of any reasonable doubt to the party opposing the motion and inferences are to be drawn in favor of that party. *Id.*

Undisputed facts in this case indicate that plaintiff is entitled to summary judgment. It is undisputed that a valid insurance contract provided coverage before March 3, 1983. That contract provided that the policy could be cancelled by either the plaintiff or the defendant upon appropriate notice. There is no dispute that the policy was not cancelled before its expiration date.

The contract also indicated that renewal of the policy was a possibility. It contained a provision which laid out the method by which either party could forego renewal. It indicated that the insurance company could refuse to renew the policy as follows:

> We may decline to renew this policy. If we do, we will mail notice of renewal to the Principal Named Insured at the address last known to us at least 30 days before the end of the policy term.

However, it is undisputed that the insurance company did not decline to renew the policy. Rather, the insurance company offered to renew the policy by sending plaintiff a renewal package.

Just as the contract had provided a method by which the insurance company could forego renewal, the contract also provided a method by which the insured party could forego renewal. The contract stated:

> If we offer to renew this policy, and the Principal Named Insured declines, it will automatically terminate at the end of the policy term. Failure to pay the required renewal premium means that our offer to renew has been declined.

It is undisputed that plaintiff desired to renew the policy. She therefore sent defendant a check written out in the amount of the renewal premium which defendant had requested for renewal. Regardless of this fact, defendant contends that plaintiff did not accept its renewal offer but, rather, declined it. Defendant's argument is based on the undisputed fact that plaintiff's check was subsequently dishonored by the bank and returned for lack of sufficient funds.

The undisputed facts in this case indicate that plaintiff accepted defendant's renewal offer and that she communicated her acceptance to defendant by mailing her check to the insurance company. Thus, a valid contract was formed.

We find unpersuasive defendant's argument that because plaintiff's check bounced she did not accept defendant's renewal offer. Defendant raises a technical argument based on the language of the previous insurance contract which stated: "Failure to pay the required renewal premium means that our offer to renew has been declined." Defendant's emphasis on this language in the previous contract is misplaced. Insurance policies, like all contracts, are agreements between two or more parties which the courts must interpret. *Eghotz v Creech,*

365 Mich 527, 530; 113 NW2d 815 (1962); *Stein v Continental Casualty Co,* 110 Mich App 410, 418; 313 NW2d 299 (1981), lv den 414 Mich 853 (1982). When interpreting an insurance policy, one provision should not be singled out, but the contract should be read as a whole. An ambiguous contract provision must be construed against the insurer/ drafter and in favor of the insured. *Engel v Credit Life Ins Co,* 145 Mich App 55, 61; 377 NW2d 342 (1985); *Farm Bureau Mutual Ins Co of Michigan v Hoag,* 136 Mich App 326; 356 NW2d 630 (1984), lv den 422 Mich 920 (1985); *Usher v St Paul Fire & Marine Ins Co,* 126 Mich App 443; 337 NW2d 351 (1983). It is hornbook law that insurance contract ambiguity is construed against the drafter, the insurer. *Mays v Insurance Co of North America,* 407 Mich 165, 172; 284 NW2d 256 (1979). As a general rule, it is the court's duty to ascertain the meaning which the insured would reasonably expect from the language of the contract. *Hoag, supra.*

The aforementioned language is at most ambiguous. It follows shortly after a provision which sets forth a method which the insurance company may use to decline renewal. Thus, it is reasonable to assume that the disputed provision simply sets forth a method by which the insured may indicate his or her desire to forego renewal. The disputed sentence may reasonably be read as a clarification intended for the insured's benefit. It indicates to a reasonable insured person that he or she will not be bound to an unwanted contract when renewal notices are sent out if the insured simply refrains from sending anything back to the company. This clause aids the insured by notifying him that he or she need not take any affirmative action in order to forego renewal.

In addition, the actual offer to renew was made

when defendant sent plaintiff a renewal package. There is no evidence that anything in that renewal package, as opposed to the previous contract, prescribed only one particular mode of acceptance for that package which would be acceptable to defendant. Thus, under undisputed facts, plaintiff accepted defendant's renewal offer and a new contract was formed.

The cancellation provisions of the previous policy were repeated in the new policy. Those provisions required notice of cancellation to be sent to the insured. The trial court correctly analyzed the cancellation issue and determined that defendant's March 29, 1983, notice could not retroactively terminate coverage before the date of the accident. Plaintiff was therefore entitled to judgment as a matter of law.

Affirmed.

Cynar, P.J. (dissenting). Respectfully, I dissent. The dispute in the instant case revolves around the nonrenewal of plaintiff's policy, and not cancellation of the policy. The nonrenewal passage, which is Section 12 of defendant's policy, provides in pertinent part as follows:

> If we offer to renew this policy, and the Principal Named Insured declines, it will automatically terminate at the end of the policy term. Failure to pay the required renewal premium means that our offer to renew has been declined.

The policy was scheduled to come up for renewal on March 2, 1983, and plaintiff was so informed prior to the renewal date. On March 4, 1983, plaintiff sent a check in the amount of the renewal premium due on the policy. The check was dishon-

ored for nonsufficient funds. The check was resubmitted for payment a second time but was again dishonored for nonsufficient funds.

The insurance contract language is clear: the policy provides for automatic termination at the end of its term if plaintiff failed to pay the renewal premium. Plaintiff declined to renew by failing to pay the required premium. I would reverse the judgment of the lower court.