239 N.J. Super. 25 (1990)
570 A.2d 999
JOHN CERVONE AND LENORA CERVONE, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT, AND PRUDENTIAL COMMERCIAL INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1989.
Decided February 15, 1990.
*26 Before Judges KING, BAIME and KEEFE.
Gail Boertzel argued the cause for appellant (Stephen S. Weinstein, attorney; Bruce A. Seidman on the brief)
James J. Mahoney argued the cause for respondent (Kelly & Mahoney, attorneys; James J. Mahoney on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from a summary judgment entered by the Superior Court, Law Division, determining that plaintiffs John and Lenora Cervone were entitled to coverage under an automobile insurance policy issued by defendant New Jersey Automobile Full Insurance Underwriting Association (Association) through its servicing carrier, Prudential Commercial Insurance Company (Prudential). The Association denied liability on the *27 basis that the policy had expired prior to the accident which resulted in the claim and that plaintiffs' attempt to renew was ineffective because the premium was received after the due date set forth in Prudential's conditional renewal offer. The Law Division judge granted plaintiffs' motion for summary judgment, holding that where a carrier's offer to renew is conditioned upon payment of a premium which is not received by the due date, the insured nevertheless continues to be covered unless a notice of cancellation is mailed in accordance with the requirements of N.J.S.A. 17:29C-10.
On appeal, the Association contends that where an insured fails to comply with a conditional offer to renew by not sending the premium prior to the due date the policy lapses and a notice of cancellation need not be mailed. We agree with this argument for the reasons expressed in our opinion filed this day in Lopez v. New Jersey Automobile Full Insurance Underwriting Association, et al, 239 N.J. Super. 13, 570 A.2d 994 (App.Div. 1990). We are thus convinced that the Law Division judge erred by granting plaintiffs' motion for summary judgment. However, our review of the record persuades us that substantial questions exist with respect to whether the Association should be equitably estopped from denying liability on the basis that plaintiffs' policy expired. These questions were not directly raised by plaintiffs and hence were not addressed by the Law Division judge. We are thus constrained to remand the matter to insure full exploration of the relevant factual and legal issues presented.
Unfortunately, the sparse record is not entirely informative with respect to the precise chronology of events. This case concerns an automobile accident involving Lenora Cervone and her demand for coverage under a policy issued to her father, John Cervone. Prudential claimed that there was no policy in existence on the date of the accident, August 25, 1987, due to Cervone's failure to pay a renewal premium on time.
*28 Prudential issued an automobile insurance policy to John Cervone on August 5, 1986. By its terms, the policy was to expire at 12:00 noon on August 5, 1987. The policy was issued by Prudential on behalf of the Association, a statutory non-profit organization established to provide insurance to individuals who are unable to obtain coverage in the voluntary market. N.J.S.A. 17:30E-2.
At least 30 days prior to the August 5, 1987 expiration date Prudential sent Cervone a letter offering to renew his policy. The offer to renew was conditioned upon Prudential's receipt of Cervone's premium payment on or before August 5, 1987. In its submissions to the Law Division, Prudential acknowledged that it was unable to locate a copy of its notice. However, Prudential supplied what it characterized as an "identical" notice, which is part of the record before us. Plaintiffs concede that they received a notice of Prudential's offer to renew. They do not acknowledge, however, that the document submitted to the Law Division is identical to the one they received.
In any event, the notice in the record sets forth the full premium amount, the minimum payment and the due date. The notice states further that the "premium payment is due on or before the due date" and that "[t]here is no `grace period' provision." The notice also provides that Prudential "must receive the minimum payment by the due date or this policy will expire." Also set forth in the notice is the statement that "[t]here are no reinstatement privileges" and that "[a] payment received after the due date will not extend the insurance protection." The document also states that the insured "will not receive further notice."
Accompanying this notice was an "automobile policy declarations" sheet and an "insurance identification card." The declarations sheet sets forth the types and amounts of coverage, the named insureds and the described automobiles. The document states further that the "policy period" commences at "12:01 a.m. standard time" and runs from August 5, 1987 to August 5, *29 1988. Among other things, the insurance identification card provides that the policy is "effective" on August 5, 1987 and "expir[es]" on August 5, 1988.
It is undisputed that the premium payment was not received by the August 5 due date. In his certification, Cervone stated that he mailed the premium on August 8, 1987. Prudential concedes that it received the payment on August 14, 1987. What happened next, however, is not altogether clear.
Apparently, Prudential cashed Cervone's check. However, in a letter dated August 20, 1987, Prudential advised Cervone that "[b]ecause [it had] received a payment after the effective date of the cancellation, the policy could not be reinstated." The letter also referred to a notice sent previously to Cervone "stating that [the] policy was cancelled." The meager record sheds no more light on whether or not a notice of cancellation had been sent to the Cervones. If such a notice was sent, it would be ineffective to cancel any policy in force because it was not mailed at least 15 days prior to its effective date as mandated by N.J.S.A. 17:29C-8. Nevertheless, as we held in Lopez v. New Jersey Automobile Full Insurance Underwriting Association, et al., a notice of cancellation was not required because the policy had lapsed. However, such a notice, depending upon when it was sent and when it was received, would obviously be material with respect to the question of equitable estoppel. In the absence of a notice, Cervone might reasonably have believed that Prudential had accepted his premium payment and that a policy was in force. Unfortunately, the paltry record is silent on the issue and we leave the subject for further inquiry and development at the remand hearing.
Accompanying the August 20, 1987 letter was a refund check. The draft is dated August 21, 1987. The record does not disclose precisely when the letter and check were received by the Cervones. Norma Cervone, John's wife, testified in depositions that the refund check was not received until after the accident. The Association in this appeal asserts generally *30 that it was mailed before the accident. We note that stamped on the August 20 refund letter is a notation "1987 Sep-1 9:49." The record does not inform us with respect to the meaning of this reference.
The facts concerning the accident are not in dispute. On August 25, 1987 Lenora Cervone, while traveling to her place of employment, struck the rear of an automobile stopped in front of her, thereby propelling that vehicle into another car. The Cervones notified Prudential of the accident on the same day, but were advised that their policy had lapsed.
Plaintiffs thereafter instituted this action against Prudential seeking to recover various expenses incurred as a result of the accident. After summary judgment was granted, plaintiffs amended their complaint to name the Association as a defendant. Following a proof hearing, judgment was entered in plaintiffs' favor in the sum of $15,117.70.
In our recital of the facts, we have taken pains to stress that the truncated and sketchy record submitted to us is largely uninformative with respect to certain pivotal questions. For example, we do not know exactly what was contained in Prudential's conditional offer to renew sent to the Cervones prior to the expiration of their policy. Although Prudential provided the Law Division with what it claimed to be an "identical" offer to renew, plaintiffs' response was highly equivocal and the subject was not pursued further. In a similar vein, a substantial question exists with respect to the date Prudential mailed its premium refund check to the Cervones. While Prudential claimed that the draft was sent prior to the accident, the notation stamped on the enclosure letter is suggestive of the thesis that it was mailed on September 1, 1987, some two weeks after plaintiffs' check covering the premium was received and cashed. As we pointed out previously, the record does not reveal whether plaintiffs received prior notification that their premium payment had been rejected because it was received by *31 Prudential after the due date. Of course, we offer no opinion with respect to the exact chronology of events.
This paucity of information surely gives us pause, however. If Prudential retained plaintiffs' unearned premium and returned it only upon being informed of Lenora Cervone's accident, a cogent argument can be made that it acted in bad faith and the Association should be estopped from relying upon the lapse in policy coverage. Although by no means directly on point, we have held in Englishtown Auc. Sales v. Mt. Vernon Fire Ins., 112 N.J. Super. 332, 337, 271 A.2d 292 (App.Div. 1970), that an insurer's retention of premiums covering a period beyond the effective date of its notice of cancellation estopped the insurer from denying coverage for an accident occurring subsequent to the purported cancellation date. In Ciccone v. The Colonial Life Ins. Co., 110 N.J.L. 276, 279, 164 A. 444 (E. & A. 1933), the Court of Errors and Appeals held, albeit in a slightly different context, that "[b]y acceptance of the premium, [the insurer] waived the forfeiture" and "[t]he policy was thereby revived...." More recently, in Kende Leasing v. A.I. Credit, 217 N.J. Super. 101, 524 A.2d 1306 (App.Div. 1987), we held that an insurer, by reason of its retention of premiums beyond the cancellation date and the date of loss, was estopped from claiming that the policy was cancelled. Id. at 116, 524 A.2d 1306.
These decisions are predicated upon the equitable consideration that an insurer cannot "assert a right to the premium for valid insurance, and at the same time insist that the insurance ha[s] never been effected." Englishtown Auc. Sales v. Mt. Vernon Fire Ins., supra, 112 N.J. Super. at 337, 271 A.2d 292. By its retention of the premium, the insurer can be said to have induced reasonable reliance on the part of the insured, an "essential ingredient" of the doctrine of estoppel. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 129, 179 A.2d 505 (1962). See also Goldberg v. Commercial Union Ins. Co. of N.Y., 78 N.J. Super. 183, 192, 188 A.2d 188 (App.Div. 1963).
*32 This principle has particular efficacy in the context of automobile insurance. Our statutes provide that an owner of an automobile must maintain liability coverage. N.J.S.A. 39:6B-1. Violation of this statutory mandate subjects the offender to substantial penalties, including possible incarceration. N.J.S.A. 39:6B-2. Against this backdrop, an administrative lag in apprising an insured that he is not covered because of a late premium payment may have serious ramifications for the unwary and innocent public.
Also relevant is the fact that Prudential had sent the Cervones a declaration sheet[1] and an insurance identification card.[2] Both documents contained references to an "effective date" of August 5, 1987. Standing alone, these documents are suggestive of the fact that a policy was in force, thereby inducing reasonable reliance on the part of the plaintiffs. Cf. Miller v. Reis, 189 N.J. Super. 437, 444, 460 A.2d 210 (App.Div. 1983). See also N.J.S.A. 39:3-29.
As we have emphasized, we take no position with respect to these questions. We are convinced, however, that the interests of justice will best be served by remanding the matter for a plenary hearing to insure full exploration of these issues. Accordingly, the order granting summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] We recognize that the voluntary market regulation, N.J.A.C. 11:3-8.2(b), and Association rule provide that a renewal offer may be in the form of a "certificate" or "declaration set." Where the offer to renew is conditioned upon the timely payment of a premium, this fact should be clearly set forth in the "certificate" or "declaration set" to insure that the customer is fully aware of his obligation to pay the premium in a prompt fashion.
[2] N.J.S.A. 39:3-29 provides that an insurance identification card "shall be in the possession of the driver or operator at all times when he is in charge of a motor vehicle...." A person violating this section is subject to a fine not exceeding $100.