628 A.2d 778

IBRAHIM ABDEL–RAHMAN, AS ADMINISTRATOR AD PROSE-
QUENDUM OF THE ESTATE OF TAHER ABDEL–BASET, DE-
CEASED, PLAINTIFF, v. GARY L. LUDAS, AHMED ELGETH-
ARY A/K/A AHMED ELGOHORY, AND JOHN ROE (SAID NAME
BEING FICTITIOUS AND UNKNOWN), DEFENDANTS.

GARY L. LUDAS, THIRD–PARTY PLAINTIFF/APPELLANT,
v. OHIO CASUALTY INSURANCE GROUP, THIRD–
PARTY DEFENDANT/RESPONDENT.

MOHAMMED SHAMS MOHAMMED, PLAINTIFF, v. GARY L. LU-
DAS, AHMED ELGETHARY AND JOHN DOE (CURRENTLY
UNIDENTIFIED OWNER AND OPERATOR OF A MOTOR VE-
HICLE), DEFENDANTS.

GARY L. LUDAS, THIRD–PARTY PLAINTIFF/APPELLANT,
v. OHIO CASUALTY INSURANCE GROUP, THIRD–
PARTY DEFENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1993—Decided July 7, 1993.

Before Judges J.H. COLEMAN, ARNOLD M. STEIN and CONLEY.[1]

*Frank P. Arleo* argued the cause for appellant (*Arseneault, Donohue, Sorrentino & Fassett,* attorneys; *Mr. Arleo* on the brief and reply brief).

[1] Judge Conley did not participate in oral argument. However, the parties consented to her participation in the decision.

*Alan H. Bernstein* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Mr. Bernstein* on the brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

On September 17, 1990, Ahmed Elgohory's [2] vehicle broke down in the right northbound lane on the Garden State Parkway. Taher Abdel–Baset, one of the passengers, exited the vehicle and began pushing the car to the grassy area next to the right shoulder. Gary L. Ludas, driving another vehicle, struck Elgohory's vehicle. Abdel–Baset was killed in the collision. Mohammed Shams Mohammed, another passenger in Elgohory's vehicle, was injured. Mohammed and Ibrahim Abdel Rahman, Abdel–Baset's administrator ad prosequendum, filed personal injury and wrongful death/survivorship actions against Ludas and Elgohory.

Ludas filed a third-party complaint against Ohio Casualty Insurance Group asserting that Ohio was required to defend and indemnify him under the terms of an insurance policy issued by Ohio. The motion judge granted summary judgment in Ohio's favor. We affirm.

On January 29, 1990, Ludas and his wife, Daria, applied for an automobile insurance policy with Ohio through the Oliver L.E. Soden Agency in Jamesburg. On February 7, 1990, Ohio's branch office in Union approved the policy which was issued on February 16, 1990.

Sandra Lee Latham, an examiner employed by Ohio, explained in her deposition that the branch office underwrites the policy but the "home office" sends the premium notice directly to the policyholder. The premium notice provides that "CHECKS OR DRAFTS ACCEPTED IN PAYMENT ONLY IN EVENT THEY ARE HONORED ON PRESENTATION." A copy of the

---

[2] Also referred to in the pleadings as "Elgethary."

premium bill is also sent to the insurance broker but not to the branch office. According to Latham, payment is due within sixty days from the date that it is mailed to the policyholder.

When the premium is not paid in a timely fashion, another bill, the "final budget," which advises the policyholder that the policy will be canceled on a specific date for nonpayment of the premium, is sent to the policyholder. When the policyholder fails to pay the premium after the final budget is sent from the home office, the policy lapses. Two or three days after the policy lapses, a notice of cancellation, together with a notice of termination, is sent to the policyholder, the agency and the branch office.

On March 15, 1990, a second budget was sent to Ludas, due on March 30, 1990. On April 9, 1990, a second final budget was sent to Ludas, which was due on April 29, 1990. On May 4, 1990, Ohio issued a notice of cancellation advising Ludas that the policy would be canceled on May 22, 1990.

On May 18, 1990, Ludas made a payment to the insurance broker, who forwarded the payment to Ohio. Ohio received the payment on May 23, 1990. Even though the payment was received after the effective date of cancellation, the policy was reinstated because a payment is considered received when the payment is received by the insurance broker.

On June 6, 1990, a claim was reported against Ludas's policy. On June 13, 1990, a second budget was sent to Ludas which was due on June 28, 1990. Ludas did not pay this bill, and a second final budget was mailed to him on July 9, 1990, which was due on July 29, 1990.

The Soden Agency received check no. 107 for $651 from Ludas, representing $575 for the policy premium and $76 that Ohio had previously returned to defendant as unearned premium to cover the period of policy lapse. The check was dated July 30, 1990. The broker at the Soden Agency gave Ludas a receipt, dated July

2, 1990,[3] advising him that payment was "[s]ubject to the acceptance by the company." On July 31, 1990, a second budget lapse was issued because Ohio had not received the payment made to the broker.

On August 2, 1990, Ohio sent Ludas a notice of cancellation, effective August 20, 1990, because payment was not received by July 29, 1990. Latham testified that on August 3, 1990, Ohio prepared instructions for reinstatement of Ludas's policy because the insurance broker had received the check from defendant before July 29, 1990.

On August 6, 1990, Ludas was sent a "no more lapse" letter because Ohio received the check from the broker who had received the check before the payment deadline of July 29, 1990. According to Latham, Ohio's records indicated that on August 13, 1990, Ludas received a three-month, short term reinstatement of his policy. Included with the reinstatement letter was the following notice:

IT IS AGREED THAT THE POLICY IDENTIFIED ON THE "AUTOMOBILE INSURANCE DECLARATIONS" PAGE TO WHICH THIS ENDORSEMENT IS ATTACHED, WHICH POLICY WAS PREVIOUSLY TERMINATED, IS REINSTATED AS OF THE DATE AND FOR THE PERIOD SHOWN ON SAID "AUTOMOBILE INSURANCE DECLARATIONS" PAGE.

IT IS FURTHER AGREED THAT:

(1) IF THE CONSIDERATION ACCEPTED BY THE COMPANY AS PAYMENT FOR THIS REINSTATEMENT IS IN THE FORM OF A CHECK OR DRAFT AND THE BANK ON WHICH THAT CHECK OR DRAFT IS DRAWN DISHONORS IT ON PRESENTATION, THIS REINSTATEMENT IS VOID AS OF ITS INCEPTION.

(2) IF IN THE FUTURE THIS POLICY (OR ANY RENEWAL THEREOF) IS TERMINATED BECAUSE OF LATE PAYMENT, THE COMPANY WILL RESERVE THE RIGHT TO REINSTATE AS OF THE DATE THE PAYMENT IS RECEIVED OR NOT REINSTATE AND RETURN UNEARNED MONIES.

---

[3] Ludas claims that the check was given to the broker at the Soden Agency on July 28, 1990. He concedes, however, that the receipt is "erroneously" dated "7/2."

A claim was issued against the policy on August 14, 1990. Michael Calvert, an underwriting supervisor at the home office, explained in his certification that Ohio received Ludas's check on August 14, 1990, and deposited it in Ohio's account at First National Bank of Southwestern Ohio. On August 22, 1990, Ohio was advised that the check was dishonored by Ludas's bank, Berkeley Federal Savings Bank.

William R. Cook, III, a retail operations officer for Berkeley Federal Savings Bank, testified in his deposition that Ludas had both a business account and a personal account with Berkeley Federal. He testified that check no. 107, dated July 30, 1990, was written on the business account. This check was first presented to Berkeley Federal on August 15, 1990, and it was returned for insufficient funds on August 16, 1990. Cook stated that a notice was mailed to Ludas advising him that the check was dishonored.

Ohio directed First National to present Ludas's check for a second time on August 22, 1990. Cook stated that the check reached Berkeley Federal on August 23, 1990, and was returned for insufficient funds on August 24, 1990. Another notice advising of the dishonor was mailed to Ludas. Cook also stated that Ludas's bank statement, dated August 31, 1990, and mailed to the Ludases within five business days, indicated that the check had been dishonored.

On September 5, 1990, Ohio was notified by First National that Berkeley Federal again dishonored Ludas's check for insufficient funds. Latham explained Ohio's policy for dealing with dishonored checks. Checks are presented for payment twice. When a check is dishonored because of insufficient funds for the second time, Ohio will cancel the policy. Latham stated the policyholder, however, is entitled to make timely payment to the insurance broker when a check is dishonored. Latham testified that Ohio was not required to notify the branch office when a check is dishonored.

On September 6, 1990, the policy was canceled "manually," *i.e.*, removed from the computer system. On September 12, 1990,

Ludas was informed that the policy was canceled, effective July 29, 1990,[4] because the check was dishonored. A copy of this letter was also sent to the agency and the branch office. Latham explained that the policyholder cannot reinstate a policy through Ohio after cancellation, but must reapply for insurance through the broker.

Ludas did not dispute these facts. In his deposition, he explained that Daria, his wife, mistakenly deposited money into the personal account that should have been deposited into the business account to cover check no. 107. Ludas testified that during this period of time his wife handled the mail because he was busy with work. He denied being aware of the reinstatement notice or the notice of cancellation.

In her deposition, Daria testified that she found the cancellation notice the following year, in 1991, when she was going through a box of papers and that she did not remember receiving the reinstatement notice. Daria acknowledged that she received her bank statement from Berkeley Federal, indicating that the check had been dishonored, in September, a few days after the collision. She also claimed that she did not receive the individual notices from Berkeley Federal.

Judge Span concluded:

> They can't be bound for coverage with a check that is sent back for insufficient funds. It is apparent, after all the discovery that has been completed in this case, that there's always insufficient funds in both accounts of the Ludases and there was no way that this check could have been honored. And, therefore, in fact, it may have been a fraudulent act on the part of the Ludases submitting this check for payment. Or maybe it was simply negligence. But, they had to have known that there was no money by which this check would have been honored.

---

[4] We note that the proper date of cancellation is August 20, 1990, as provided in the notice of cancellation, rather than July 29, 1990. *See Lopez v. New Jersey Full Automobile Ins. Underwriting Ass'n,* 239 *N.J.Super.* 13, 18–21, 570 A.2d 994 (App.Div.) (insurance company must comply with the statutory requirements for proper filing of notice of cancellation), *certif. denied,* 122 *N.J.* 131, 584 A.2d 206 (1990). *See also Hodges v. Pennsylvania Nat. Ins. Co.,* 260 *N.J.Super.* 217, 615 A.2d 1259 (App.Div.1992).

The mere fact of delivering the check, a worthless piece of paper, I have to agree, to the insurance company on the date that they presented it, was not enough to keep their policy in effect. And the company was within their rights in canceling the policy when they did which would have been prior to the happening of the accident. It is certainly too bad from the Ludases' point of view and perhaps the plaintiffs' point of view that this occurred, but it did occur.

■ Both parties argue the merits of the "conditional payment doctrine" that has been adopted in other states. *See* Annotation, *Receipt of check for insurance premium as preventing forfeiture for nonpayment,* 50 *A.L.R.*2d 630 (1956). Under this doctrine, in the absence of an agreement by the parties to the contrary, an insurance company's acceptance of a check for payment of an insurance premium is assumed to be a conditional acceptance until the check is honored for payment upon proper presentment. *Id.* at 632. However, an insurance company may be deemed to waive the nonpayment forfeiture of the insurance policy based on the insurance company's subsequent conduct. *Ibid.* This waiver analysis is essentially an estoppel argument.

■ The conditional payment rule has been adopted in New Jersey. *See Needham v. New Jersey Ins. Underwriting Ass'n,* 230 *N.J.Super.* 358, 367, 553 *A.*2d 821 (App.Div.1989) ("the Association had the authority under the statute to cancel the policy when it became clear that the prepayment requirement had not been met, *i.e.,* when the draft was returned dishonored by [the bank]"). See also *Lovett v. Alan Lazaroff & Co.,* 244 *N.J.Super.* 510, 512–13, 582 *A.*2d 1274 (App.Div.1990), where we held that a bank's dishonor of defendant's check for insufficient funds that was tendered as payment for the initial automobile insurance premium renders the insurance policy issued by the third-party defendant void *ad initio.* In this case, Ludas's failure to pay the premium, which occurred when the check was dishonored, entitled Ohio to cancel his insurance policy.

The contract terms between Ohio and defendant unambiguously established that Ohio's acceptance of a check was conditioned upon payment when presented to the bank. The premium notice provides that "CHECKS OR DRAFTS ACCEPTED IN PAY-

MENT ONLY IN EVENT THEY ARE HONORED ON PRE-SENTATION." Likewise, the reinstatement endorsement provided that:

(1) IF THE CONSIDERATION ACCEPTED BY THE COMPANY AS PAYMENT FOR THIS REINSTATEMENT IS IN THE FORM OF A CHECK OR DRAFT AND THE BANK ON WHICH THAT CHECK OR DRAFT IS DRAWN DISHONORS IT ON PRESENTATION, THIS REINSTATEMENT IS VOID AS OF ITS INCEPTION.

Ludas was thus apprised of the nature of Ohio's acceptance when he paid the premium with a check. His attempt to isolate the word "acceptance" in the premium notice is not the plain reading of the sentence. The contract terms are not ambiguous. The plain language of the insurance contract should therefore be enforced because it reflects the objectively reasonable expectations of the parties. *Meier v. New Jersey Life Ins. Co.*, 101 *N.J.* 597, 612–13, 503 *A.*2d 862 (1986).

We reject as unsupported by the record Ludas's contention that Ohio should be estopped from denying coverage because the carrier delayed in informing him that the policy would be canceled if payment were not made by July 29, 1990. *Cf. Cervone v. New Jersey Automobile Full Ins. Underwriting Ass'n*, 239 *N.J.Super.* 25, 31–32, 570 *A.*2d 999 (App.Div.1990) (insurance company cashing of check when policy lapsed because defendant failed to pay renewal fee in timely fashion estopped insurance company from denying coverage after policy expired); *Englishtown Auction Sales, Inc. v. Mount Vernon Fire Ins. Co.*, 112 *N.J.Super.* 332, 337, 271 *A.*2d 292 (App.Div.1970) (retention of premium after effective date of notice of cancellation estopped the insurer from denying coverage).

In *Cervone*, we reversed a summary judgment in plaintiffs' favor granting them coverage under a renewal insurance policy. 239 *N.J.Super.* at 27, 570 *A.*2d 999. We remanded because "substantial questions exist with respect to whether the Association should be equitably estopped from denying liability on the basis that plaintiffs' policy expired." *Ibid.* We concluded that a genuine issue of material fact was raised as to the carrier's bad

faith because the insurance company retained a premium payment beyond the expiration date, returning the premium only after learning that plaintiffs were involved in an accident. *Id.* at 31, 570 *A.*2d 999. We also noted that the insurance company had issued an insurance identification card and sent a declaration sheet to the plaintiffs which suggested that the insurance policy was still in effect. *Id.* at 32, 570 *A.*2d 999. Unlike *Cervone*, there is no evidence suggesting that Ohio induced Ludas's reliance on the continuation of the insurance policy if the check was dishonored.

The cases relied on by defendant are not on point. In *M.F.A. Mutual Ins. Co. v. Quinn*, 259 *S.W.*2d 854, 859 (Mo.Ct.App.1953), the court found that the insurance company waived the forfeiture for nonpayment because the insurance company extended the period of time for payment, solicited payment of the past-due premium and accepted the late payment. Ohio neither extended the time for payment nor solicited a past-due payment.

In *Bartleman v. Humphrey*, 441 *S.W.*2d 335, 343–45 (Mo.1969), the court found that because the policy did not provide that it would be in effect only if the premiums were paid, a jury question was raised as to whether the insurance company intended to conditionally or absolutely accept the policyholder's check as payment. Ohio's policy clearly stated that acceptance of a check or draft would be conditional until the check was honored for payment.

This case is also distinguishable from *Hagerl v. Auto Club Group Ins. Co.*, 157 *Mich.App.* 684, 403 *N.W.*2d 197, 198–99 (1987), where the court held that language in an insurance renewal offer providing that "[f]ailure to pay the required renewal premium means that our offer to renew has been declined" was ambiguous, and construed this phrase against the insurance company. The court concluded that plaintiff accepted the insurance company's offer for renewal when plaintiff sent a check to the insurance company notwithstanding the fact that the check was subsequently dishonored for insufficient funds. *Id.* 403 N.W.2d at 198. Unlike *Hagerl*, the language in Ohio's premium notice and in the rein-

statement notice was not ambiguous. *See also Burns v. Prudence Life Ins. Co.,* 243 *S.C.* 515, 134 *S.E.*2d 769, 772–73 (1964).

In *Cullotta v. Kemper Corp.,* 78 *Ill.*2d 25, 34 *Ill.Dec.* 306, 310, 397 *N.E.*2d 1372, 1376 (1979), the court reversed a summary judgment in favor of the insurance company holding that a renewal policy issued without a conditional clause raised the presumption that the insurance company accepted the policyholder's check absolutely.

The summary judgment entered in the trial court is affirmed.