726 A.2d 275 (1999)
319 N.J. Super. 581
Steven IAFELICE, Jr., by and through his Guardian Ad Litem Louis WRIGHT, Plaintiff-Respondent,
v.
Salvatore ARPINO, Julia Arpino, Philip Arpino and Rosario Arpino, Defendants-Respondents, and
Farmers' Mutual of New Jersey, and Whelan Adjustment, Inc., Defendants-Appellants, and
William A. Romano Agency, Steven Iafelice, Karen Iafelice, Debbie Centofani, and Rich Goldman, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1999.
Decided March 29, 1999.
*276 Eli L. Eytan, for defendants-appellants Farmers' Mutual of New Jersey and Whelan Adjustment, Inc. (Mauro C. Casci, Leonardo, attorney; Mr. Eytan, on the brief).
Craig S. Laughlin, Hazlet, for plaintiff-respondent Steven Iafelice, Jr. (Sawyer, Gale & Laughlin, attorneys; Mr. Laughlin, on the brief).
Dennis A. Cipriano, West Orange, for defendants-respondents Salvatore Arpino, Julia Arpino, Philip Arpino and Rosario Arpino.
No other parties participated in this appeal.
Before Judges PETRELLA, D'ANNUNZIO and COLLESTER.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendants Farmers' Mutual of New Jersey (Farmers' Mutual) and Whelan Adjustment, Inc. (Whelan) appeal from the grant of summary judgment in a declaratory judgment action brought by Steven Iafelice, Jr., a minor (a third party to the insurance policy), seeking to determine whether certain insured individual defendant were entitled to coverage under their homeowner's policy. The motion judge ruled that Farmers' Mutual waived its right to cancel coverage for nonpayment of premium by its conduct in returning the insureds' incorrect payment made before the cancellation period expired, allowing them to correct the error. We affirm.
Farmers' Mutual argues that the motion judge inappropriately granted plaintiff Iafelice's summary judgment motion. It contends that it effectively canceled the policy it had issued to the homeowners by a notice of cancellation which gave the insureds 10 days to pay any outstanding premiums. Moreover, Farmers' Mutual argues that the judge should have held a plenary hearing to resolve any questions of fact as to whether it had waived the notice of cancellation. Alternatively, it argues that the judge abused his discretion in awarding counsel fees because of the Arpinos' failure to pay the policy premium and that he should have further reduced the counsel fees awarded to the Arpinos' second attorney.
On April 19, 1995, plaintiff Iafelice filed suit against defendants, Salvatore Arpino, Julia Arpino, Philip Arpino and Rosario Arpino,[1] the landlords of the premises, and, Deborah Centofani and Rich Goldman, the dog's owners, for personal injuries sustained from a dog bite. Plaintiff simultaneously filed a declaratory judgment action against Farmers' Mutual, the insurer of the dwelling owned by the Arpinos, William A. Romano, *277 principal of William A. Romano Agency, the Arpinos' insurance agent and Whelan Adjustment, Inc. Plaintiff's parents, Steven and Karen Iafelice were added as defendants and, his uncle, Louis Wright, was substituted as guardian ad litem. The matters were eventually consolidated.
The Arpinos then unsuccessfully moved for summary judgment. Soon thereafter new counsel was substituted and the Arpinos again unsuccessfully moved for summary judgment.
In November 1997, Farmers' Mutual moved for summary judgment, claiming that the notice of cancellation effectively terminated the policy prior to the dog bite incident. Plaintiff Iafelice cross-moved for summary judgment, seeking a declaration that the Arpinos were covered at the time of the dog bite. The Arpinos opposed Farmers' Mutual's motion, which was denied. Iafelice's cross-motion for summary judgment was granted. Plaintiff Iafelice and the Arpinos thereafter successfully moved for counsel fees pursuant to R. 4:42-9(a)(6). The judge deconsolidated the actions and Farmers' Mutual filed its Notice of Appeal.
The facts are relatively straight-forward. At the relevant times Salvatore and Julia Arpino owned a rental property at 141 Ocean Avenue in Point Pleasant Beach insured by Farmers' Mutual for the term from May 20, 1994 to May 20, 1995.
On October 4, 1994, Farmers' Mutual sent a ten day cancellation notice to the Arpinos, stated to be effective October 14, 1994, for non-payment of premiums of $232. It is undisputed that on October 10, 1994, the Arpinos sent a check in payment, but the written statement of the amount on the check was $200, while the numerical amount stated "$232.00." The check was eventually returned (exact date unknown) by Farmers' Mutual's billing clerk with a letter, dated October 19, 1994, informing the Arpinos: "Check amounts do not agree. Stated and written amounts differ ... Thank you for your prompt attention to this matter. If necessary, please make all changes and return to the Billing Department."
By a November 2, 1994 letter, Romano and the Arpinos requested reinstatement of the policy and included a check for the balance of $232. Farmers' Mutual then reviewed the Arpinos' file, noting they had a history of late payments and cancellations, and informed Romano in early November that it considered the policy cancelled.
On November 10, 1994, Romano wrote the Arpinos, advised them that Farmers' Mutual declined to reinstate the policy, returned the check, and informed the Arpinos that alternative coverage would be available for $864.75. The Arpinos claimed they did not receive this letter.
On December 4, 1994, the minor plaintiff was allegedly bitten by Centofani's and Goldman's dog at Arpinos' property. The Arpinos submitted the dog-bite claim to Farmers' Mutual which rejected it because it considered the coverage cancelled.

I.
Farmers' Mutual contends that the judge erred in granting summary judgment because the notice of cancellation for non-payment of premium effectively canceled the policy. It asserts that an insurer is entitled to cancel a policy for non-payment with less than thirty days notice[2] and that once a cancellation is issued, a bad check or improper payment does not toll the time for cancellation. It asserts that it would not have canceled the policy had the Arpinos simply paid the premiums by the cancellation date.
Farmers' Mutual also contends that any issue as to whether it waived its notice of cancellation should not have been decided as a matter of law because waiver is a fact question for a jury to determine.[3]
*278 Plaintiff argues that Farmers' Mutual waived its right to cancel the homeowner's insurance policy by its subsequent conduct. After receiving the Arpinos' second check, Farmers' Mutual attempted to obtain full payment rather than cancel the policy. He concedes that Farmers' Mutual could have canceled the policy for non-payment on ten days notice. However, he takes the position that the subsequent conduct of the insurer, coupled with the tender of the proper premium, requires the insurer to give 30 days notice to cancel under N.J.A.C. 11:1-5.2. He argues that the decision to terminate did not occur until November 10, 1994; thus, 30 days later, the policy was canceled and the December 4 incident was covered under the policy.
N.J.S.A. 17:29C-1 grants the Commissioner of Insurance the power to promulgate rules for insurance companies doing business in this State. Pursuant thereto, the Commissioner promulgated, N.J.A.C. 11:1-20.2, which provides:
A policy shall not be canceled for nonpayment of premium unless the insurer, at least 10 days prior to the effective cancellation date, has mailed or delivered to the insured notice as required under this subchapter of the amount of premium due and the due date. The notice shall clearly state the effect of nonpayment by the due date. No cancellation for nonpayment of premium shall be effective if payment of the amount due is made prior to the effective date set forth in the notice.
However, an insurer, through its subsequent actions or conduct may waive its right to cancel coverage for non-payment of premiums. See Englishtown Auction Sales v. Mt. Vernon Fire Insurance Co., 112 N.J.Super. 332, 335, 271 A.2d 292 (App.Div. 1970) (waiver of cancellation notice by insurance company's retention of payments); Kende Leasing Corp. v. A.I. Credit Corp., 217 N.J.Super. 101, 115, 524 A.2d 1306 (App. Div.), certif. denied, 108 N.J. 664, 532 A.2d 242 (1987) (delay in returning the unearned premiums raises a question of estoppel).
We expressed a similar view in Abdel-Rahman v. Ludas, 266 N.J.Super. 46, 48, 628 A.2d 778 (App.Div.1993), stating that under the conditional payment doctrine, an insurance company's acceptance of the check for payment of a premium is assumed to be a conditional acceptance until the check is honored for payment. However, the insurance company may waive the nonpayment forfeiture of the insurance policy based on its subsequent conduct. Id. at 53, 628 A.2d 778. In Abdel-Rahman, we rejected the insured's contention that the insurance company should be estopped from denying coverage because of the delay in informing him that the policy would be canceled if not paid by July 29, 1990. Id. at 54, 628 A.2d 778.
In Bonnet v. Stewart, 68 N.J. 287, 291, 344 A.2d 321 (1975), the insurer appealed from a judgment of coverage as a matter of law. The trial court held for the insured, finding that the insurer waived the breach for nonpayment. Our Supreme Court wrote: "[a] `waiver' in the sense of the present controversy can be found if the conduct of the insurer after information of fraud or breach of contract is such as to justify an inference of affirmation rather than rescission of the contract." Id. at 294, 344 A.2d 321. In the typical case, if a fact-finder could reasonably draw either inference, i.e., rescission or affirmation, the issue is one of fact for the jury. Ibid.
Moreover, in Bruni v. Prudential Insurance Co. of America, 51 N.J. 408, 241 A.2d 449 (1968) (reversing without opinion for reasons expressed on dissent in Bruni v. Prudential Insurance Co. of America, 100 N.J.Super. 154, 159, 163-164, 241 A.2d 455 (App.Div.1967)), the Court adopted the following language in the dissenting opinion:
It is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely. Since provisions for payment of premiums and reinstatement are considered to be for the benefit of the insurer, they may likewise be the subject of waiver, thus rendering *279 the insurance company liable for loss occurring during a time when, according to its contract, it would be relieved from liability.

* * *
A waiver of a forfeiture clause is predicated upon the acts or conduct of the insurer with knowledge of a breach tending to show recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach. (citation omitted) Because the courts are loathe to enforce forfeitures, it is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman unversed in insurance provisions, to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice.
[Bruni v. Prudential Insurance Co. of America, supra (100 N.J.Super. at 159, 163-164, 241 A.2d 455).]
Here, Farmers' Mutual sent the Arpinos a notice of cancellation for non-payment of premium on October 4, to be effective October 14. Under the notice of cancellation, the Arpinos had an opportunity to make payment prior to the date of cancellation. The Arpinos submitted that payment on October 10, although an error occurred by having two amounts on the check. Nothing in the record indicates that there was not a good faith attempt to make a proper payment in the correct amount before October 14. There is nothing further for a fact finder to determine. Farmers' Mutual, rather than canceling the policy, returned the payment and invited the Arpinos to correct the error. This conduct constitutes an affirmation, rather than a rescission of the insurance contract. See Bonnet v. Stewart, supra (68 N.J. at 294, 344 A.2d 321). The only reasonable conclusion based on these facts is that Farmers' Mutual, by its conduct, waived any right it may have had at that time to cancel the policy for non-payment. It cannot rely on any claim of lack of authority by a billing agent in light of the clear apparent authority of the letter-sender. See Mann v. Interstate Fire & Casualty Co., 307 N.J.Super. 587, 595-596, 705 A.2d 360 (App.Div.1998); Evangelou v. Terzano, 298 N.J.Super. 467, 475-476, 689 A.2d 840 (App.Div.), certif. denied, 151 N.J. 467, 700 A.2d 879 (1997). Thus, the motion judge appropriately granted summary judgment in favor of plaintiff Iafelice and the Arpinos. See Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).

II.
Farmers' Mutual argues that the award of counsel fees should be vacated because the judge failed to consider the Arpinos' conduct, namely, their failure to make timely payment on the insurance policy. It claims that had the Arpinos paid the premiums on a timely basis, there would have been no need for a declaratory judgment action. It further argues that even if an award of counsel fees was appropriate, the motion judge should have reduced the award of counsel fees to the Arpinos' second attorney.
Plaintiff argues that the judge properly exercised his discretion in awarding counsel fees to him as a "successful claimant" under an indemnity policy under R. 4:42-9(a)(6).
Normally, each party pays their own attorney's fees, but there are several exceptions to that policy by statute and court rule. One such example is under R. 4:42-9(a)(6), which applies here and states: "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except ... [i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."
The comment to R. 4:42-9(a)(6) adds that "the rule is intended to cover all such actions, including those brought by thirdparty beneficiaries, in which the insurer or indemnitor is found therein to have failed to comply with its contractual undertakings." Pressler, Current N.J. Court Rules, comment 2.6 on R. 4:42-9(a)(6). See also Hanover Insurance Co. v. McKenney, 245 N.J.Super. 282, 286, 584 A.2d 1367 (Law Div.1990). "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the *280 policy." Liberty Village Assoc. v. West American Insurance Co., 308 N.J.Super. 393, 406, 706 A.2d 206 (App.Div.), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998). Moreover, an insured need not show bad faith on the part of the insurer to recover its fees. Ibid. at 406, 706 A.2d 206.
Counsel fees are not mandatory in every action upon a liability or indemnity policy, but rather the trial judge has broad discretion as to when, where, and under what circumstances counsel fees may be proper and the amount to be awarded. Enright v. Lubow, 215 N.J.Super. 306, 313, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987); Helton v. Prudential Property and Casualty Insurance Co., 205 N.J.Super. 196, 200-201, 500 A.2d 717 (App. Div.1985); Kistler v. N.J. Manufacturers Insurance Co., 172 N.J.Super. 324, 329, 411 A.2d 1175 (App.Div.1980). For example, our courts have construed the rule to be inapplicable to direct actions brought by the insured against the carrier to enforce coverage. Enright v. Lubow, supra (215 N.J.Super. at 311-312, 521 A.2d 1300).
Since equitable principles govern the trial court's decision, the court should consider the totality of the circumstances in awarding counsel fees. Id. at 313, 521 A.2d 1300.
Here, the motion judge awarded Iafelice's attorney $1,785.00. For the insured's, the Arpinos' first attorney requested and was awarded $3,317.40. Their second attorney requested $18,332.82, but the motion judge reduced the allowance to $12,500.00. Based on these facts, the judge's award of counsel fees under R. 4:42-9(a)(6) was not an abuse of discretion.
Affirmed.
NOTES
[1] Hereinafter collectively referred to as Arpinos.
[2] N.J.S.A. 17:29C-1 provides that an insurance company shall give thirty days written notice to the insured of cancellation of any such policy. See N.J.A.C. 11:1-5.2(a)(1).
[3] In determining whether the right to a jury trial attaches to a declaratory judgment action, we look to whether the underlying claim is legal or equitable in nature. Environmental Insurance Declaratory Judgment Actions, 149 N.J. 278, 292-293, 693 A.2d 844 (1997) (action for coverage relating to future harm constitutes action for specific performance). A declaratory judgment action seeking general contract damages, such as this, triggers a right to a jury trial. Ward v. Merrimack Mutual Fire Insurance Co., 312 N.J.Super. 162, 168, 711 A.2d 394 (App.Div. 1998).