938 A.2d 134 (2007)
397 N.J. Super. 463
PIERMOUNT IRON WORKS, INC., Plaintiff-Appellant, and
Travelers Property Casualty Company of America, f/k/a The Travelers Indemnity Company of Illinois and National Union Fire Insurance Company of Pittsburgh, PA, for themselves and as assignees of J.T. Magen & Company, Inc., Plaintiffs/Intervenors-Appellants,
v.
EVANSTON INSURANCE COMPANY, Defendant-Respondent, and
Morris Winograd Agency, Defendant-Appellant, and
Insurex, Inc., Defendant/Third-Party Plaintiff-Appellant,
v.
Burns & Wilcox, Ltd., Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 2007.
Decided December 18, 2007.
George J. Kenny, Roseland, argued the cause for appellant Piermount Iron Works in A-5788-05T3 (Connell Foley, L.L.P., attorneys; Mr. Kenny, of counsel and on the brief).
Alan H. Bernstein, Roseland, argued the cause for appellant Insurex, Inc. in A-5803-05T3 (Wolf Block Schorr & Solis-Cohen, L.L.P., attorneys; Mr. Bernstein, *136 of counsel and on the brief; Stuart J. Polkowitz, on the brief).
Wendy L. Mager, Princeton, argued the cause for appellant Travelers Property Casualty Company of America in A-5810-05T3 (Smith Stratton, attorneys; Ms. Mager, on the brief).
Lerner, Piermount & Riverol, Jersey City, attorneys for appellant Morris Winograd Agency in A-6079-05T3, join in the brief of appellant Insurex, Inc.
Anthony M. Pisciotti, Florham Park, argued the cause for respondent Evanston Insurance Company (Pisciotti, Malsch & Buckley, P.C., attorneys; Mr. Pisciotti and Danny Lallis, on the brief).
Sanford D. Kaplan, Fort Lee, argued the cause for respondent Burns & Wilcox, Ltd. (Muscio & Kaplan, L.L.C., attorneys; Michael Muscio, of counsel; Mr. Kaplan, on the brief).
Before Judges WEISSBARD, S.L. REISNER and BAXTER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
In this insurance coverage case, plaintiff Piermount Iron Works, Inc. (Piermount), joined by Travelers Property Casualty Company of America (Travelers), J.T. Magen & Company, Inc. (Magen), Morris Winograd Agency (Winograd), and Insurex, Inc. (Insurex) (collectively appellants), appeal from a series of trial court orders all dated May 24, 2006, denying appellants' summary judgment motions and granting summary judgment in favor of defendant Evanston Insurance Company (Evanston) and third-party defendant Burns & Wilcox, Ltd. We consolidated appellants' appeals, and we now reverse the grant of summary judgment and remand for further proceedings on limited issues.

I
This case presents the issue as to the proper interpretation of the following clause in an umbrella insurance policy issued by Evanston to Piermount[1]:
19. When We Do Not Renew
If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date or such other period as may be required by law.
If notice is mailed, proof of mailing will be sufficient proof of notice.
There is no dispute that Evanston did not give its insured thirty days prior notice of an intent not to renew the policy, or of Evanston's intent not to renew unless its insured met certain additional requirements not previously imposed as a condition precedent to renewal. These included *137 filling out a new contractor's questionnaire, in addition to the usual renewal application, and paying a nearly five-fold premium increase before Evanston would bind coverage. Evanston did not advise the insured of these requirements until after the policy expired. The policy's expiration date was March 13, 2002, about two weeks before an accident befell one of Piermount's employees. On March 14, 2002, Insurex faxed a renewal application to B & W and requested that coverage be bound. Instead of binding coverage as it had in the past, Evanston refused to bind coverage until Piermount completed a new questionnaire and satisfied additional requirements.
Because Evanston is a surplus lines carrier, it was not required under New Jersey insurance regulations to provide notice of nonrenewal or to include the specific nonrenewal clause found in paragraph 19 of its policy. See N.J.A.C. 11:1-20.1(a). However, New Jersey insurance regulations require other types of commercial insurers to include this clause in their policies. See N.J.A.C. 11:1-20.2. The clause is a part of the standard ISO policy used by non-surplus lines insurers, and the meaning of the nonrenewal notice requirement has been construed in case law. The nonrenewal notice provision is construed to require an insurer to give notice of a conditional as well as an absolute intent not to renew a policy. See Barbara Corp. v. Bob Maneely Ins. Agency, 197 N.J.Super. 339, 344, 484 A.2d 1292 (App.Div.1984), app. dism., 102 N.J. 339, 508 A.2d 214 (1985).
Appellants contend that the clause in the Evanston policy should be construed in a manner consistent with the regulations. Based on case law as well as uncontroverted evidence in the record concerning the standard practice in the surplus lines industry, we agree with appellants. We also conclude that failure to give the required notice resulted in continued coverage through the date of the accident.
We, therefore, reverse the trial court order granting summary judgment to Evanston and remand for entry of an order granting summary judgment in favor of Piermount and the other appellants on the coverage issue. We also remand to the trial court to resolve Evanston's claims concerning late notice of the accident, and any claims for counsel fees that any of the parties may assert.

II
These are the most pertinent facts. The case arises from a construction accident that befell Jay Jacobs, an employee of the subcontractor Piermount, on March 28, 2002. J.T. Magen was the general contractor on the project. The accident occurred on a project in New York, and Jacobs sued Magen in New York. Jacobs prevailed against Magen in that litigation and Magen also obtained summary judgment for indemnification against Piermount.
Magen then sought coverage as an additional insured on Piermount's primary policy from Lexington Insurance Co. and its excess policy from Evanston. Evanston denied coverage. The Jacobs suit settled for $2 million with Lexington paying half and Magen's liability insurer, Travelers, paying half. Piermount sued Evanston in New Jersey seeking a declaration of umbrella liability coverage; Travelers intervened, seeking reimbursement for its $1 million contribution to the settlement. Piermount also sued Winograd, its insurance broker, Insurex, the surplus lines broker through which Winograd sought to place the umbrella policy, and Burns & Wilcox, the surplus lines wholesaler through which Insurex had previously obtained the Evanston policy for Piermount.
*138 After all parties moved for summary judgment, the trial judge denied the motions and required the parties to complete discovery concerning the course of dealing between the insured and the insurer and the industry custom. The parties completed discovery and once again filed summary judgment motions.
Relying on Citta v. Camden Fire Ins. Assoc., 152 N.J.Super. 76, 377 A.2d 779 (App.Div.1977), a second trial judge concluded that Evanston had no duty to give its insured advance notice that the policy was expiring, nor did it owe a duty to give conditional notice of nonrenewal. According to the judge's opinion granting summary judgment to Evanston, despite knowing that the Evanston policy was expiring on March 13, 2002, Piermount and its broker Winograd failed to send payment to renew the policy after Evanston sent an offer for renewal on March 22, 2002. Instead, Piermount obtained coverage with a different insurer in April 2002. The judge also reasoned that Piermount could have made the new coverage retroactive to the expiration date of the Evanston policy, but did not do so. He denied summary judgment to Insurex, Piermount and Travelers.[2]
The trial judge also concluded that Burns & Wilcox had given Piermount notice of the impending expiration in January 2002. The judge based this conclusion on a certification from Ken Laderoute of B & W attesting that B & W had provided the notice. However, it is undisputed that Laderoute recanted his affidavit during his later deposition and admitted that B & W had no proof that the notice was ever actually sent to Piermount or Insurex.
The record contained undisputed evidence from Frank Siegel, Vice President of the New Jersey Surplus Lines Association, an expert witness for Insurex, and Greg Gross, president of Insurex, that standard practice in the surplus lines industry required the insurer to give the insured advance notice of new requirements for renewal or to send a notice of conditional nonrenewal, and that this industry standard was reflected in the Evanston policy's nonrenewal clause. However, instead of relying on this legally competent evidence, the judge relied on unsworn representations from B & W's counsel, made at oral argument on the motion, concerning the purpose of the nonrenewal notice clause.

III
We engage in de novo review of a trial court's grant of summary judgment, Prudential Prop. & Cas. Ins. Co., v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998), using the same legal standard the trial court uses to decide a summary judgment motion. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). Viewing the record in light of that standard, we are unable to agree with the legal conclusions reached by the trial court.
We begin our analysis by considering the law relating to the nonrenewal clause. Pursuant to authorizing legislation, N.J.S.A. 17:29C-1,[3] the Commissioner *139 of Banking and Insurance has adopted regulations designed to prevent lapses in insurance coverage by requiring insurers to give their insureds at least thirty days notice before canceling or non-renewing a policy. N.J.A.C. 11:1-5.2(a). See Barbara Corp. v. Bob Maneely Ins. Agency, 197 N.J.Super. 339, 344, 484 A.2d 1292 (App. Div.1984), app. dism., 102 N.J. 339, 508 A.2d 214 (1985)("What is material is the legislative desire to avoid lapses in coverage for want of notice."). The rule is designed to protect innocent injured third parties as well as the insureds. See Harvester Chem. Corp. v. Aetna Cas. & Sur. Co., 277 N.J.Super. 421, 432 n. 8, 649 A.2d 1296 (App.Div.1994), certif. denied, 139 N.J. 441, 655 A.2d 443 (1995). "The purpose of the required notice is to give the insured the opportunity to guard against the peril of noncoverage, a peril which, as this case shows, can arise out of miscommunication among brokers, agents, insureds and carriers." Echevarias v. Lopez, 240 N.J.Super. 104, 108, 572 A.2d 671 (App.Div.1990).
To that end, if an insurer fails to give the required notice, the policy remains in effect until notice is given:
(a) No policy shall be nonrenewed upon its expiration date unless a valid written notice or nonrenewal has been mailed or delivered to the insured in accordance with the provisions of this subchapter.
. . . .
(j) For the purposes of this subchapter, if an insurer fails to send a notice of nonrenewal as required by this subchapter or fails to issue and deliver a policy replacing at the end of the policy period a policy previously issued and delivered by the insurer, or fails to issue and deliver a certificate or notice extending the term of a policy beyond its policy period or term, or fails to provide notice of renewal as specified at (c) above, the insured shall be entitled to continue the expiring policy at the same terms and premium until such time as the insurer shall send appropriate notice of termination or renewal under this subchapter.
[N.J.A.C. 11:1-20.2(a) and (j).]
These regulations do not apply to surplus lines carriers such as Evanston. N.J.A.C. 11:1-20.1(a). However, there is no dispute that the nonrenewal clause in the Evanston policy is exactly the same as the clause included in the standard policy (standard ISO policy) issued by insurers that are subject to the regulations. The issue is whether the nonrenewal clause in the Evanston policy should, therefore, be interpreted with reference to the construction given to the regulations and to the language in the standard ISO policy.
We begin with some fundamental principles of insurance policy construction:
The rights and duties of parties to an insurance policy are generally controlled by its language. Absent ambiguity or contravening public policy, we are required to construe an insurance policy in accordance with its language. Examination of the policy language will ordinarily reflect the objective reasonable expectations of the parties.
[Valley Nat'l Bancorp. v. Am. Motorists Ins. Co., 316 N.J.Super. 152, 157, 719 A.2d 1028 (App.Div.1998) (citations omitted).]
In Valley National, we recognized that comparable statutory and regulatory provisions requiring advance notice of nonrenewal of insurance policies reflected the *140 "public policy of this State." Id. at 158, 719 A.2d 1028. In that case, the insurer had canceled a fire insurance policy, and the issue was whether it had provided adequate proof of service of the cancellation notice. We concluded that the service requirements in the fire insurance policy should be construed with reference to regulations governing the service of cancellation notices for other types of insurance:
Defendant distinguishes statutory law, Insurance Department regulations, and certain case law from this appeal because they deal with automobile or commercial liability policy cancellations. N.J.S.A. 17:29C-1, -10; N.J.A.C. 11:1-20.2(a), (b), (c), (i); Weathers v. Hartford Ins. Group, 77 N.J. 228, 390 A.2d 548 (1978). True as those distinctions may be, Weathers, N.J.S.A. 17:29C-10, and Celino[ v. General Accident Ins.], supra, [211 N.J.Super. 538, 512 A.2d 496 (1986)] (which construed N.J.S.A. 17:29C-10, as amended, subsequent to the Weathers decision), offer reasonable guidelines for assessing proofs that an insurer's claims are evidence of effective notice of policy cancellation. We consequently consider them in the context of the unauthenticated form document defendant relies upon to meet its burden of proof that effective notice occurred.
[Id. at 157-58, 719 A.2d 1028.]
Looking to the requirements of those regulations, we concluded that the insurer had not provided sufficient proof that it made effective service of its cancellation notice. Id. at 158-59, 719 A.2d 1028.
A similar approach is appropriate in construing the nonrenewal clause in the Evanston policy. That is, in construing the clause in the policy, we will look to the analogous requirement in insurance regulations even though those regulations do not apply to Evanston. In reaching that conclusion we bear in mind that insurance policies are contracts of adhesion drafted by the insurers:
Insurance contracts are unipartite in character. They are prepared by the company's experts, [persons] learned in the law of insurance who serve its interest in exercising their draftsmanship art. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured.
[Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 7-8, 170 A.2d 800 (1961).]
From this principle and Valley National, supra, we conclude that when an insurer voluntarily includes in its policy a clause that mirrors one included in a standard ISO policy required by insurance regulations, both the insurer and the insured can reasonably expect that the clause in the insurer's policy will be construed consistently with the clause in the ISO policy and with the regulations requiring that clause. In so concluding, we are not applying the regulation to Evanston, rather we are construing the notice clause in the Evanston policy.
This brings us to the question of what "nonrenewal" means when notice of nonrenewal is mandated by regulation. That question was addressed in Barbara Corp. v. Bob Maneely Ins. Agency, supra. In that case, a fire insurance company failed to give the insured notice that its policy would expire on a date certain. The insured did not renew the policy and a fire occurred on its premises. The insurer contended that there was no coverage, because the insured had not renewed the policy and that the insurer was not required to send the 30-day notice mandated *141 by regulation because it had no intent to cancel or not renew the policy.
After reviewing the fundamental purposes of the notice requirement to insure against lapses in coverage, 197 N.J.Super. at 345, 484 A.2d 1292, we concluded that "nonrenewal" included nonrenewal in the event the insured failed to meet certain conditions:
Application of the foregoing principles governing statutory construction and the plain meaning of the statute persuade us to conclude that N.J.A.C. 11:1-5.5(a)(3) not only required the insurer to give notice of its intention not to renew based on underwriting considerations, but also required the insurer to give notice to the insured 30 days prior to the expiration of the policy of its intention not to renew should the renewal premium not be paid on or before the expiration date. We read the requirement for notification to apply whether the intent not to renew is absolute, such as for underwriting reasons, or only conditional, depending, as appears to be the case here, upon the insured's failure to pay the premium. Once the insured receives notice that the carrier has either an absolute or conditional intent not to renew, the insured is then on notice to obtain other coverage or satisfy the preconditions in order to obtain a replacement policy. This construction of N.J.S.A. 17:29C-1 and N.J.A.C. 11:1-5.5(a)(3) is necessary to effectuate fully the legislative intent  the prevention of lapse in coverage.
[Ibid.]
We concluded that, in order to effectuate the Legislative purpose, the insurer's failure to give notice would result in the continuation of coverage:
Even though Continental argues that it intended to renew the policy, it is clear that this intent was conditioned upon payment of premium. The fire loss occurred approximately six months past the renewal date and Continental had done nothing to evidence an intent not to renew. The effect of this silence, misleading plaintiff into believing it was insured, is one of the mischiefs sought to be suppressed by the regulation. Surely the legislature would not undertake to prevent lapses in coverage while at the same time permit lapses by allowing the insurer to remain silent as to when the next premium is due. We are fully satisfied that the legislature intended to place the burden on the insurer to notify the insured that his policy will soon expire unless the next premium is paid. We do not regard this as a heavy burden on the insurer . . . The obligation has been placed on the carrier by the regulation to give the required notice. Failure to do so requires automatic renewal regardless of the conduct of brokers or agents.

[Id. at 345-46, 484 A.2d 1292 (emphasis added).]
Applying Barbara to the case before us, we conclude that the clause in the Evanston policy should be construed with reference to the Banking and Insurance Department regulations.[4] Thus, it required *142 Evanston to give Piermount written notice of the expiration of the policy, and required Evanston to notify Piermount of any additional conditions that would be imposed before Evanston would renew the policy.
This conclusion is supported by unrebutted expert testimony, offered by Insurex, that the custom and practice in the surplus lines industry requires an insurer to give notice, in advance of the expiration date of a policy, of newly-imposed requirements for renewal, or to issue a notice of conditional nonrenewal. Further, Insurex's president Greg Gross testified at his deposition that it was the custom in the surplus lines industry to provide advance notice of the conditions on which a policy would be renewed:
It's customary practice that the facility contact the broker 30 to 45 days in advance of the anniversary date, and at that time the conditions of the renewal policy are indicated, the renewal quote or what's required to deliver a quote, so the timing will be consistent with the natural anniversary date.
In fact, the notice that Evanston's agent B & W apparently planned to send in January but did not send, would have given notice that Evanston would not automatically renew coverage but would instead require submission of a new application. The notice also had various check-boxes to notify the insured of other pre-conditions to renewal. Thus, Evanston's own practices acknowledged the need to notify the insured in advance of the pre-conditions Evanston would impose for renewal.
In addition to the regulations and evidence of industry custom, general principles of insurance contract interpretation support our conclusion:
We start with the well settled proposition that if the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, that which will sustain coverage will be applied. Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7, 170 A.2d 800 (1961). . . . Applicable also is another settled principle, that purchasers of insurance are entitled to "the broad measure of protection necessary to fulfill their reasonable expectations." In the language of our Supreme Court, "their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'" Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961).
[Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J.Super, 29, 35-36, 312 A.2d 664 (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974).]
See also Gibson v. Callaghan, 158 N.J. 662, 671, 730 A.2d 1278 (1999). According to the undisputed evidence, Piermount had previously been able to obtain renewed coverage under the Evanston policy without filling out an additional questionnaire or paying an enormous premium increase. While these new requirements may have made good business sense to Evanston, Piermount was entitled to advance notice of them so that it could either comply or obtain replacement insurance without a lapse in coverage. "An insured cannot be penalized for an insurance company's internal procedures." Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 609, 503 A.2d 862 (1986). Instead, Piermount only learned after its coverage period had expired that Evanston would not bind coverage based on a written request from Insurex, as before, and was insisting on completion of a questionnaire *143 and a five-fold premium increase.
We conclude that failure to comply with the nonrenewal notice clause in the policy resulted in continuation of coverage.[5] We agree with Piermount's contention that when Evanston finally gave notice on March 22, 2002, as to exactly what would be required to renew the policy, that set the clock ticking on the thirty-day window for renewal of the policy. Hence, there was coverage on March 28, 2002, the date of the accident. The fact that Piermount ultimately decided not to renew the Evanston policy and obtained coverage elsewhere on April 11, 2002, does not change our conclusion. Had Piermount known thirty days in advance that Evanston was going to impose additional requirements and quintuple its premium, it could have obtained alternative coverage before rather than after the March 13 date on which its Evanston policy was set to expire.
Other than the claim concerning late notice, Evanston's and B & W's remaining appellate contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Consequently, we reverse the order granting Evanston summary judgment, and remand for entry of an order granting summary judgment to Piermount and the other appellants on the issue of continued coverage due to lack of notice. We also remand for consideration of Evanston's claim that it did not receive timely notice of the accident, and for consideration of claims for counsel fees that may be asserted by any party; we express no view as to the merits of any claim to be considered on remand.
Reversed in part, and remanded.
NOTES
[1] We briefly review the status and relationship of the parties. Evanston, an eligible surplus lines carrier under N.J.S.A. 17:22-6.40, provided umbrella insurance coverage to Piermount, a construction contractor, beginning in 2000. Piermount obtained the Evanston policy through the following complex series of transactions. Piermount sought umbrella insurance through Winograd, a retail insurance broker. Winograd, in turn, arranged for the Evanston policy through Insurex, a surplus lines insurance broker. In turn, Insurex dealt with Burns & Wilcox (B & W), a surplus lines wholesaler, to obtain the Evanston policy. B & W also transacts business as Illinois RB Jones Company, which is the managing agent for Evanston. By virtue of a management agreement with an underwriting group, B & W is authorized to solicit, receive and accept proposals for contracts of insurance to be issued by Evanston. Thus, as Evanston's program administrator, B & W wrote the initial commercial umbrella insurance policy for Piermount in March 2000, and also renewed the policy in 2001.
[2] All remaining parties reached a settlement on June 5, 2006. Hence, these appeals are not interlocutory.
[3] N.J.S.A. 17:29C-1 provides: ". . . the Commissioner of Banking and Insurance is hereby authorized and empowered to direct, by rule or regulation . . ., that insurance companies organized under the laws of this State or organized to do business in this State, shall include provisions in policies of insurance written by any such company in this State, whereby 30 days' written notice shall be given; (1) to the insured, of the cancellation of any such policy; and, (2) to any designated mortgagee not named therein as the insured of the cancellation of any interest in such policy; and, (3) to the insured, of intent not to renew any such policy." [Emphasis added].
[4] Citta v. Camden Fire Ins. Assoc., supra, on which the trial court relied, is not on point because it was decided before the Commissioner adopted the regulations requiring advance notice of nonrenewal, and our decision there was premised on the absence of such regulations. 152 N.J.Super. at 78-79, 377 A.2d 779. Moreover, unlike the present case, in Citta there was no evidence as to the prior course of dealing between the parties. Id. at 78, 377 A.2d 779. And finally, while Piermount or Insurex may have known that the policy was expiring, they did not know that Evanston was going to refuse to timely renew it without imposing new requirements not part of their prior course of dealing.
[5] Because B & W did not send Piermount the January 25, 2002 renewal notice, Evanston's reliance on Lopez v. N.J.A.F.I.U.A., 239 N.J.Super. 13, 570 A.2d 994 (App.Div.), certif. denied, 122 N.J. 131, 584 A.2d 206 (1990), is misplaced. In Lopez, the insurer alleged that it sent a timely offer to renew. Id. at 17, 570 A.2d 994. Likewise, in Cervone v. N.J.A.F.I.U.A., 239 N.J.Super. 25, 27, 570 A.2d 999 (App.Div.1990), the insurer sent the insured an offer to renew the policy thirty days before the existing policy expired. See also Romanny v. Stanley Baldino Constr. Co., 142 N.J. 576, 584, 667 A.2d 349 (1995)(insurer sent "a timely renewal quotation" thirty days prior to the expiration of the policy).